Geiger *vs.* Green.—1846.

---

CHRISTOPHER GEIGER, AND JOSEPH AND EDWARD PATTERSON, ET AL., *vs.* RICHARD GREEN.—*December* 1846.

Where the object of a bill in equity is to obtain specific performance of a contract, and the writ of injunction is prayed for only to protect the property, the subject of the contract, against the wrongful acts of the defendant, pending the contest, and until the right to specific performance shall be determined, that writ cannot be maintained, unless the case presented by the bill, would authorise a court of equity to enforce the contract.

Specific performance of a contract, is not a matter of right in the parties, but depends upon the sound and reasonable discretion of the court; is granted or withheld according to the circumstances of the case; and the court must be satisfied, that the contract sought to be enforced is fair, just, and reasonable, equal in all its parts, and founded on an adequate consideration.

*O* granted to *R,* " the privilege of digging and moving the ore on that part of my (*O's,*) place, joining *W* and *P's,* at twenty-five cents per ton, for the privilege of ground; leave also to build a house on said land, the workmanship to cost, &c., the materials to be got on my (*O's,*) land, at *R's* expense." This confers the mere privilege of digging ore; is not compulsory; imposed no corresponding obligations on *R,* who might refuse to work the mine, and *O* could not oblige him to work it. It contains no mutual or reciprocal engagements, and cannot be specifically enforced in equity: consequently there was no ground for granting or continuing an injunction upon its stipulations.

Upon an appeal against continuing an injunction, if the Court of Appeals perceives that the complainant has, and can have, no equity at final hearing, the bill will be dismissed.

Appeal from the Court of Chancery.

On the 8th July 1846, *Richard Green* relying upon the following agreement, to wit:

"Baltimore County, 10*th December* 1838.

"I hereby grant to *Richard Green*, the privilege of digging and moving the ore on that part of my place joining *Wilderson* and *Price's*, at twenty-five cents per ton for the privilege of ground; leave also to build a house on said land, the workmanship to cost $100, the materials to be got on my land, at said *Green's* expense. "Charlotte C. D. Owings.

" *Jas. W. Owings.*" "Richard Green."

Filed his bill, setting forth the same; that in virtue thereof, he entered upon the land of the said *C. C. D. O.*, and dug large quantities of ore therefrom, and paid her for the same; and should have continued to raise ore therefrom, but for an accidental mental affliction, which rendered him incapable of attending to business; that while he was so incapacitated, *Christopher Geiger*, acting on behalf of himself and others, &c., represented to *C. C. D. O.*, that the appellee had abandoned his contract, and, by misrepresentation, induced the said *C. C. D. O.* to enter into some arrangement to sell to the said *C. G.* and others, a portion of the lands comprised in her agreement with him; that *Geiger* and his partners had full notice of the agreement, &c., with the appellee, when they made their agreement; that the said *C. G.* and partners, are now raising ore, and unless restrained, will deprive the said *R. G.* of all benefit of his contract. Prayer, for subpœna.

The county court, (Archer, C. J.,) awarded an injunction, on bond being filed.

The answer of *C. C. D. Owings* admitted the bill

After the coming in of the other answers, none of which denied *the contract* relied upon in the bill, nor *notice* of the existence of some agreement between the said *C. C. D. O.* and *Richard Green*, but did deny all misrepresentation charged in the bill, a motion was made to dissolve the injunction. This motion, the chancellor, (Bland,) on the 5th November 1846, overruled, and continued the injunction until final hearing.

The defendant appealed to this court.

The cause was argued before DORSEY, SPENCE, MAGRU-
DER and MARTIN, J.

By OTHO SCOTT and JOHN NELSON for the appellants, and
By MEREDITH and REVERDY JOHNSON for the appellees.

MARTIN, J., delivered the opinion of this court.

This case comes before us by an appeal from an order of
*Baltimore* county court, as a court of equity, granting an in-
junction restraining the appellants from digging iron ore on
certain lands in that county, and also from an order passed by
the court of chancery, to which the cause was transferred, con-
tinuing the injunction until final hearing, and presents for our
consideration the meaning and operation of the agreement of
the 10th of December 1838.

This contract, which appears to have been executed by
*Charlotte C. D. Owings* and the appellee, is in these words:

"I hereby grant to *Richard Green*, the privilege of digging
and moving the ore on that part of my place joining *Wilder-
son's* and *Price's*, at twenty-five cents per ton, for the privilege
of ground; leave also to build a house on said land, the work-
manship to cost one hundred dollars, the materials to be got on
my land, at said *Green's* expense."

The original bill, after reciting this contract, and alleging,
that the complainant had dug under it, a considerable quantity
of ore, and was arrested in his operations by an affliction which
incapacitated him, till within about four months before the
institution of the suit; and that during that period, an arrange-
ment was accomplished, through misrepresentation, by *Chris-
topher Geiger*, in behalf of himself and the other defendant,
with *Charlotte C. D. Owings*, for a portion of the lands cover-
ed by the contract of the 10th of December 1838, of which
*Geiger* had notice; and that the defendants were engaged in
raising ore on this land, seeks a specific performance of the
agreement, and prays, that the defendants may be restrained
from raising and removing the ore.

On the 27th of July 1846, the complainant filed a supple-
mental bill, which contains a narration of the facts set forth in
the original bill, without any material variation, but supplies

an important omission in the first bill, by praying specifically for the writ of injunction. This bill was supported by the affidavit of the complainant, and a bond having been given, as required by the court, an injunction was ordered, on the 24th of July 1846.

It is apparent, from an examination of these bills, that the object and purpose of the complainant, was to obtain a specific performance of the agreement of the 10th of December 183S, and the conservative power of the court was invoked, only to protect the property, the object of the contract, against the alleged wrongful acts of the defendants, pending the contestation, and until his right to a specific execution of this contract was finally determined. As the writ of injunction was granted, as auxiliary to the principal relief sought for by the complainant, it follows, that the order granting the injunction cannot be maintained, unless the case presented by the bills is of that character, which would authorise a court of equity, in the exercise of its extraordinary jurisdiction, to enforce the contract.

It is an acknowledged principle in the exercise of that branch of equity jurisprudence, which respects the specific performance of contracts, that it is not a matter of right in the parties, but the application is addressed to the sound and reasonable discretion of the court; it is granted or withheld according to the circumstances of the case, and a court of equity must be satisfied that the contract sought to be enforced, is fair and just, and reasonable, and equal in all its parts, and founded on an adequate consideration, before the court will interpose with this extraordinary assistance.

In the case of *Seymour against Delancey*, 6 *John. Ch. Rep.*, 224, the chancellor of *New York* said :

"Is it the dictate of sound legal discretion, that this agreement should be specifically carried into execution by the authority of this court? It is an application to sound discretion. This has been the uniform language of the courts of equity. It is not a case requiring the aid of the court, *ex debito justiciæ*. It is a settled principle, that a specific performance of a contract is not a matter of course, but rests entirely in the discretion of the court, upon a view of all the circumstances."

In defining the power and duty of a court of equity, in the exercise of this portion of its jurisdiction, the lord chancellor, in the case of *Radcliffe against Warrington*, 12 *Vesey*, 331, announced :

"That the question was, not what the court must do, but what it may do, under circumstances, either exercising the jurisdiction by granting the specific performance, or abstaining from it."

In *German against Machin*, 6 *Paige*, 292, the court determined: "That, to entitle a party to a specific performance, the agreement which is sought to be enforced, must not only be certain in its terms, but there must be mutuality in its character."

In *Boucher against Van Buskirk*, 2 *A. K. Marsh. Rep.*, 346, the court said: "That the general rule is well settled, that, to enable either party to compel a specific execution, the contract must be mutually binding on each."

In *Moore's administrators against Fitz Randolph*, 6 *Leigh R.*, 185, the court declared: "That the contract must be mutual, otherwise equity will not execute it, that is, both parties must have, by the agreement, a right to compel a specific performance, according to the advantage which it might be supposed they were to derive from it."

The same doctrine is stated by *Lord Redesdale*, in *Lawrenson against Butler*, 1 *Sh. & Lef.*, 18, where he says :

"I have no conception, that a court of equity ought to decree a specific performance in a case, except where both parties had, by the agreement, a right to compel a specific performance, according to the advantage which they might be supposed to have derived from it, because, otherwise, it would follow, that the court would decree a specific performance, where the party called upon to perform might be in this situation, that if the agreement was disadvantageous to him, he would be liable to the performance, and, yet, if advantageous to him, he could not compel a performance." This, he says, "is not equity."

The same principle is affirmed in the case of *Bromley against Jeffries*, 2 *Vernon*, 415; and it is now established, that unless there is to be found in the contract, this essential ingredient of

mutuality, a court of equity will not compel its specific execution.

This constitutes an insuperable objection to the specific performance of the agreement under consideration. It is true, that as this mine was worked, and ore raised from it by the appellee, an obligation to pay twenty-five cents for every ton that was produced, would be created. But the contract grants to the appellee the mere privilege of digging ore, and is not compulsory in its character; a privilege, to be exercised, or not, at his pleasure, imposing no corresponding obligations; and if the appellee considered the agreement into which he had entered injurious, and refused to work the mine, it is apparent from every part of this paper, that the proprietor possessed no power to enforce in a court of equity an observance of the contract.

The practical operation of an agreement of this description, is, that while the appellee may use the mine, if he finds it productive, he may refuse to do so, upon discovering that his purchase is disadvantageous, and the owner of the property would be deprived for years of the revenue, which, under other circumstances, might be derived from it.

A contract so unequal in its stipulations and bearing, which binds one party, while it leaves the other unfettered, as it respects the observance of its terms, in which there are to be seen no mutual or reciprocal engagements, and which must be regarded, therefore, as unreasonable and inequitable, can never be enforced by a court of equity.

As it is perfectly clear, that the contract, which forms the subject of the present suit, could not be enforced in equity, and that the court would have dismissed the bills, at the final hearing, there could be no ground for granting an injunction, the object of which, was to protect the property, pending the controversy, in reference to the specific execution of the agreement. We think, therefore, that the county court erred in granting the injunction, and that, for the reasons already assigned, the chancellor was in error in continuing it.

Various questions were raised by the answers of the defendants, and discussed by the counsel in the progress of the argument, in reference to which it has become unnecessary to

express an opinion, as we think that the case presented by the bill, did not entitle the complainant to the interposition of a court of equity.

The order of *Baltimore* county court, as a court of equity, granting the injunction, and the order of the chancellor continuing it, are reversed, with costs, and a decree will be signed reversing these orders, and dismissing the bills of complaint.

<div align="center">

ORDERS REVERSED, AND INJUNCTION

DISSOLVED, AND BILL DISMISSED.