# CASES

# HIGH COURT OF CHANCERY.

ISAAC TYSON, Jr.
vs.
THOMAS B. WATTS. } March Term, 1847.

### SPECIFIC PERFORMANCE—MUTUALITY—UNCERTAINTY.

A BILL for the specific performance of a contract is an application to the sound discretion of the court, which withholds or grants relief according to the circumstances of each particular case, and in the exercise of its extraordinary jurisdiction in such cases, the court, though not exempt from the general rules and principles of equity, acts with more freedom than when exercising its ordinary powers.

The contract must be fair, and just, and certain, and founded on an adequate consideration, and if deficient in either of these requisites, its performance will not be decreed; hence the plaintiff who seeks the enforcement must make out a stronger case than is required of him who resists the decree.

The contract must also possess the essential ingredient of mutuality, and in cases of inequality of obligation, it is better to leave the plaintiff to his remedy at law for damages; for if equity acts at all, it must act *ex vigore*, and carry the contract into execution with unmitigated severity.

The manifest object of the defendant in this case, (and which he believed was secured by the contract,) was to have the minerals on his farm *worked* as well as explored, and by the contract he gave full power to *P.*, the assignor of the plaintiff, to make explorations and to *work* the mines, but the only engagement on the part of *P.* being limited to explorations, and he not being bound to *work* the mines, the contract was held deficient in reciprocity of obligation, and its specific execution refused.

2

[The object of the bill filed in this case was to procure the specific performance of an agreement entered into on the 8th July, 1844, between the defendant, Thomas B. Watts, of Baltimore county, and Thomas Petherick, an unnaturalized foreigner, then residing in Philadelphia. By the terms of the agreement Watts was to permit Petherick to explore and work certain copper mines, on what he represented to be his farm, reserving to himself a certain portion of the profits; and Petherick was, before a certain day, to "commence proper operations for ascertaining by explorations the mineral prospects on the said farm." On the 22d December, 1844, Petherick disposed of his interest under the agreement to the complainant Isaac Tyson, Jr., who afterwards filed this bill for the specific performance thereof; alleging, that Petherick at the time the agreement was executed, thought Watts was possessed of an unincumbered fee simple interest in said property, but that he afterwards found that he only had the reversion after the termination of the life estate of his mother, and that this reversionary interest was in mortgage; that Petherick, though disappointed at this information, still expected such title as Watts was able to give, and had afterwards conveyed his interest to the complainant, who with the same expectation, and in good faith, purchased the same, and demanded of Watts the privilege of mining to the extent of said Watts' interest in the property— which had been refused. The defences taken by the defendant were—*laches* on the part of Petherick in not complying with the terms of the agreement by the time specified; the incompetency of Petherick, an unnaturalized foreigner, to receive, or transfer a title to the land, or the mining privilege aforesaid; the surrender to the defendant of his rights under the contract, previous to the assignment to the complainant; and the want of *mutuality* in the agreement.

The case having been argued, the Chancellor delivered his opinion as follows:]

THE CHANCELLOR:

This, as has been remarked, is a bill for the specific performance of an agreement, and is, therefore, an application to the sound discretion of the court, which withholds or grants relief according to the circumstances of each particular case, as it presents itself. The discretion it is true, is not arbitrary and capricious, but sound and reasonable; adapting itself to, and being governed as far as practicable by general rules and principles, when those rules and principles are not in conflict with the justice of the case between the parties. There would seem to be no doubt, that when a court of chancery is called upon to exert its extraordinary jurisdiction in compelling the specific performance of contracts, though it is not entirely exempt from those general principles of equity which have been found by experience best and most surely to advance the aims and ends of justice, there is nevertheless more freedom in its action than when exercising its ordinary powers. *St. John* vs. *Benedict*, 6 *Johns.*, *Ch. R.* 111. *Seymour* vs. *Delancy*, *ib.* 223. *Geiger et al.* vs. *Green*, decided by the Court of Appeals at December term, 1846. "Unless the court is satisfied," says Chancellor Kent, "that the contract is fair and just, and equal in all its parts, and founded on an adequate consideration, it will not, by the interposition of its extraordinary power, order it to be executed;" and this seems to be the established doctrine upon the subject.

If an agreement is deficient in either fairness, justice, or certainty, its specific execution will not be decreed; and hence a stronger case is required on the part of the plaintiff, asking a decree for the specific performance of a contract, than is required of him who resist such decree. 2 *Story's Eq.*, *sec.* 769, 770.

And in addition to the elements of fairness, justice, and certainty, the agreement must be mutual before the power of the court to order its specific performance can be successfully invoked; and indeed it may be well doubted, whether a contract can be considered in any respect fair and just if it be not mutual. "I have no conception," says Lord Redesdale in 1 *Sch. & Lf.* 18, "that a court of equity will decree a specific per-

formance, except where both parties had a right by the agreement to compel a specific performance, according to the advantage which they might be supposed to have derived from it."

The Court of Appeals, in the case referred to, of *Geiger et al* vs. *Green*, say, that "it is established that unless there is to be found in the contract, the essential ingredient of *mutuality*, a court of equity will not compel its specific execution." And in that case the bill was dismissed, because of the absence of that indispensable ingredient.

The contract upon which the bill in this case is filed, and the specific performance of which it seeks to enforce, contemplated not only the exploration, *but the working* of the mines of copper and other minerals on the farm of the defendant. It recites the desire of the defendant to have them explored and worked, and the willingness of the said Thomas Petherick to undertake such explorations and working, and then in consideration of one dollar paid to the defendant by Petherick, the former agreed to give to the latter, his heirs and assigns, "full power to make explorations and works on the said farm, as he, the said Petherick, might think proper for such purpose," &c., and after a reservation to the defendant of a seignorage of one full fifteenth part of the minerals, Petherick for himself, his heirs and assigns, stipulated that he would on or before the tenth day of July then next, "commence proper operations for ascertaining, by explorations, the mineral prospects on the said farm."

Although therefore it was the manifest design and object of the said defendant, to have the minerals upon his farm *worked*, as well as explored, and although for a small pecuniary consideration he gave Petherick full power to make such explorations and works, the only *stipulation* on the part of Petherick is, by a certain period "to commence operations for ascertaining, by explorations, the mineral prospects on the said farm." The engagement, therefore, on the part of Petherick was limited to the explorations, and he was not bound, according to any interpretation of the contract, to work the mines. Whilst therefore the contract gives to him the power to work the mines, as he might think proper, the only corresponding obligation on his

part was to *explore* for the purpose of ascertaining the mineral wealth of the farm. There can be no doubt, I think, that the defendant never would have entered into this contract if he had believed that the working of the mines was not secured by it, and that whether they should be worked or not depended upon the discretion of the party with whom he was contracting. The contract, therefore, it seems to me, is deficient in that reciprocity of obligation, without which, a court of equity will not decree a specific performance. It appears to me difficult to maintain, that the defendant could have obtained a decree against Petherick for the specific execution of this contract to the extent which he clearly had in view in entering into it—that is, to compel Petherick to work as well as to explore the minerals, even though the title of the defendant to the farm had been entirely unincumbered. And if this is the case—that is, if there is a want of mutuality in the *remedies* as well as the rights of the parties to the contract, it would be inequitable, as said by *Lord Redesdale in Sch. & Lef.* 18, to decree a specific performance at the suit of him who is not bound; as if the rule were different, he might enforce or avoid the contract, according as his interest might incline him the one way or the other. It is much better in such cases of inequality of obligation, to refuse a specific performance, and leave the plaintiff to seek his compensation, if he has sustained damage, by an action at law; because if equity acts at all, it must, as Chancellor Kent says, "act *ex vigore*, and carry the contract into execution with unmitigated severity."

The contract in this case, though varying of course in terms, and in some respects perhaps, in substance, from the contract in the case of *Geiger* vs. *Green,* decided by the Court of Appeals, yet in other, and in some very essential, particulars, it very much resembles that case. In that case the contract gave the complainant *the privilege* of digging and removing ore from the farm of the defendant, at twenty-five cents per ton, for the privilege of the ground—leave also to build a house on said land, the workmanship to cost $100—the materials to be got on the land of the defendant at the expense of the plaintiff.

2*

This contract, the Court of Appeals say, is unequal in its stipulations, binding one party and not the other, and consequently unreasonable and unfit to be carried into specific execution.

It seems to the Chancellor, that so far as regards the chief inducement to the contract on the part of the defendant in this case, to wit: the working and making the deposits of mineral profitable to him, it is precisely like the contract in *Geiger & Green*, because here, as in that case, the power to work the minerals is a privilege to Petherick, which he may or may not exercise, in his discretion, and consequently this contract, like that, is binding on one party and not the other, and unfit for that reason to be executed.

The bill, however, was not filed by Petherick, but by his assignee, a party with whom the defendant made no contract at all. One who has entered into no stipulations with him of any description, and who, although he has purchased the interest of Petherick in the agreement, has entered into no engagement to perform such stipulations as the contract may be supposed to have imposed upon Petherick.

The Chancellor thinks it would be difficult to maintain, successfully, that upon a bill filed by the defendant against this plaintiff, the latter could be compelled to perform those acts which it was clearly the intention of the defendant to secure, when he made this contract; and if so, the want of the element of mutuality, as between these parties, is supposed to be fatal to the right of the present plaintiff to a decree for a specific performance.

It being the opinion of the court, for the reason stated, that the plaintiff is not entitled to relief, and that the bill must be dismissed, it is not thought necessary or proper to examine the other questions raised in the argument, and by the pleadings, and therefore no opinion is expressed upon them. It may, however, not be improper to say, that there does not—in the confusion and discrepancies which have been pointed out and commented upon in the statement, of the dates of these transactions—appear in the judgment of the Chancellor to be any

ground for attributing unfair or dishonorable motives to the plaintiff.

The explanation which has been given in regard to these discrepancies, seem to me entirely to relieve the complainant from any such imputation.

Whilst, however, the court abstains from expressing an opinion, with regard to the effect upon this case which the circumstance of Petherick's being an alien may be supposed to have; or, upon the question of his alleged laches, or abandonment of the contract, as evidenced by the correspondence, it is deemed not out of place to remark, that the *uncertainty* of the provisions of the instrument which is sought to be enforced, would present a serious objection, if the other difficulties were removed. If this contract is to be enforced against the defendant, the plaintiff should surely be required to perform the agreement on his part.

But what can he be required to do, and *when* shall he be required to do it? He tells you himself that *no time* is fixed for working the mines; that this is referred to his own discretion, and cannot be commenced until after the determination of the life estate of the mother of the defendant, she being still living. Upon the whole, the Chancellor thinks the want of mutuality, the uncertainty and the difficulty of enforcing the agreement, consistently with those principles of equity by which the court must be governed in the execution of its powers, forbid the relief asked for by this bill, and that it must consequently be dismissed.

———

[This decree was affirmed by the Court of Appeals.]