William L. O'Brien *vs.* Samuel J. Pentz. Thomas Roberts *vs.* Samuel J. Pentz. Charles H. Alford and Robert H. Smith, Adm'rs c. t. a., of Edward F. Folger *vs.* Samuel J. Pentz.

*Secret contract and trust—Specific performance of a Contract—Consideration—Character of the Contract—Proof of the Contract—Court not to undertake to amend the Contract—Contract to be executed as an Entirety—What necessary to secure the Court's interference—Insufficient proof of the Execution of certain papers, with knowledge of their contents—Unsettled Accounts—Inequality of Contract—Set-off—Lapse of time.*

The complainant in a bill in equity admitted that an open legal and *bona fide* contract was made between himself and F., O'B , C., and R., to transfer to the latter all the title of the former to certain steamers in the contract referred to; but sought to have established the provisions of a secret contract and trust made between the complainant and C., and R., with the knowledge of F., and O'B.; by which although the property in the steamers had been ostensibly sold and transferred to the said parties, the complainant really retained one-sixth of the same. The evidence failed to show that F., and O'B. comprehended the transaction in the sense claimed in the bill, or that they could be held responsible as contracting parties thereto, or as affected with knowledge thereof. HELD :

1st. That there is no principle to justify a Court of equity in upholding the secret contract to the prejudice of the other.

2nd. That if the secret contract were made before the open transfer of the property, it would be superseded thereby; if after, it was made without consideration and *nudum pactum.*

The interposition of a Court of equity in granting relief by the enforcement of the specific performance of any contract is not a matter *ex debito justitiæ ;* and to warrant its interference the terms thereof must be fair, and it must

be founded on an adequate consideration and be made under circumstances commending it to the favorable apprehension of the Court.

The party seeking its execution must at the same time be able to show that he has fully, not partially, performed everything to be done on his part.

The contract must also be mutual and equal in all its parts and having no circumstances of suspicion as to its *bona fides*.

Its terms must not be ambiguous, and they must be accurately stated in the bill, and the proof must correspond therewith so as to leave no room for reasonable doubt, but be such as will enable the Court to measure out exact justice to the parties.

The Court cannot undertake to amend the contract; or if it be performed in part by the complainant, leaving other parts unperformed and without any tender of performance on his part, it cannot be carried out in part, and adjusted to that extent.

It must be executed as an entirety and cannot be arranged in parts.

In every case the question must be whether the exercise of the power of the Court is demanded to subserve the ends of justice, and unless the Court is satisfied that it is right in every respect, it refuses to interfere.

R. proved to have been an uneducated person, having unbounded confidence in the complainant, whilst admitting that he signed the papers supposing they were intended to be executed for another purpose, denied that they were ever read over to him, or that he understood their purpose as now insisted upon. And the attesting witness could not testify that they were read over to him or that he understood their meaning. HELD:

That under such circumstances there was an absence of sufficient proof of the execution of the papers with knowledge on the part of R. of their contents.

The proof failed to show that F. and O'B. knew of the existence of said papers or were cognizant of their purport. An order was drawn on them signed by C. and K. in the following words: "Gentlemen:—In pursuance of an agreement entered into between S. J. P. and ourselves, and which is irrevocable without his consent, you are hereby directed to pay over to him as fully and at the times we are entitled to be paid the same one-third of our profits from the steamboats S. J. P., H. L. and C.," and upon this order was written the following acceptance signed by F. and O'B.: "We accept the above order and agree hereafter to fulfil the same." HELD:

1st. That this order and acceptance was totally insufficient to establish such knowledge.

O'Brien *vs*. Pentz. Roberts *vs*. Same. Alford and Smith, Adm'rs *vs*. Same.

2nd. That to affect them with knowledge of the obligations of the contract there ought to have been abundant proof that they were apprised of the contents. A mere speculation or conjecture that it might have been so was not sufficient, in the face of the fact fully proven, that they had persistently refused to be connected with the complainant and strenuously objected to his having any interest in the boats, or that he should hold any rights thereto, legal or equitable.

3rd. That to rebut the necessary legal effect of the transfer of the title, there ought to have been the clearest proof of the modification of the contract in any respect.

4th. That the secret understanding between P., C., and R., could not be held to bind F. and O'B. without corroborating testimony to that effect.

The evidence showed that there were unsettled accounts between the complainant and C. and R. growing out of the management of several steamboats held by them in different proportions of interest. The books relating thereto furnished no reliable information as to the relative indebtedness of the parties, or their exact individual interest in the boats. The complainant was the active manager, and received the profits of the steamers. The other parties also received moneys from time to time from the concern, but what was their precise indebtedness did not appear from the books or accounts, or from any statement made. HELD:

That under the circumstances it was primarily the duty of the complainant to have caused accurate accounts to be kept showing at all times the condition of the business entrusted to his control and supervision. And after the alleged contract was made it was his duty to have industriously applied himself to the ascertainment of the relative indebtedness of the parties.

By the terms of the secret trust sought to be enforced by the complainant he was to receive an interest estimated to be worth $20,833, together with the profits thereon in consideration of the transfer of an interest estimated to be worth $12,500. HELD:

1st. That the contract in all its parts did not seem to be equal, and there was nothing in it to commend it to the favorable consideration of the Court for its specific enforcement, if there were no other objection to it, except such inequality.

2nd. That the question of set-off as between the parties, treating the answers as cross-bills, could not be entertained, as the books and accounts were so loosely kept that they furnished no definite *data* of the state of the indebtedness of the different parties.

3rd. That from the lapse of time, and the obscurity as to the condition of
their affairs which the testimony had not satisfactorily elucidated, there was
no sufficient ground for changing the condition the parties had made for
themselves under the contract between the complainant and F. and O'B., C.
and R., and no reliable ground upon which to base a decree affirming the
indebtedness of one to the other.

APPEALS from the Circuit Court of Baltimore City.

The bill in this case was filed on the 5th of March, 1870,
by the appellee against the several appellants and others,
and alleges:

That heretofore, your orator was jointly interested and
concerned with a certain Charles K. Cannon, of the City
of Baltimore, Thomas Roberts, of Baltimore County, and
Edward F. Folger and William L. O'Brien, both then of
New York, in the management and running of certain
steamboats from Baltimore City to Annapolis, West River
and elsewhere, upon the route known as "The Individual
Enterprise Line of Steamboats," which Steamboats were
named and known as "The Highland Light," "The
Champion," and "The Samuel J. Pentz," and that said
steamboats were owned wholly or in part by your orator,
he being one-half owner of said steamer "Highland
Light," the said Cannon and Roberts owning the other
half, and being owner of all the stock of the Individual
Enterprise Company, and as such sole owner of said
steamer "Champion," and also sole owner of said "Sam-
uel J. Pentz." And being so the owner of said steamers,
and interested and concerned in running the same, your
orator entered into an agreement with the said Cannon,
Roberts, Folger and O'Brien, to transfer to them said
steamers, and all his right, title and interest therein, and
in the various wharf-rights and privileges, together with
the good-will or custom of said Individual Enterprise
Line; your orator further agreeing not to run any steam-
ers upon said routes, nor in any way to become interested

in such opposition ; and it was agreed by the said Cannon, Roberts, Folger and O'Brien, that your orator should still retain a one-sixth interest and ownership in said steamers, and to receive one-sixth of all the net profits thereof; and that having thus agreed with the said Cannon, Roberts, Folger and O'Brien, your orator performed his part of said agreement, as hereinafter mentioned. In accordance with said agreement, your orator did, on the twenty-eighth day of February, 1867, unite in a bill of sale of the said steamer "Highland Light," with the said Cannon and Roberts, each of whom then owned one-fourth thereof, as hereinbefore stated, conveying and transferring the same to the said Cannon, Roberts, Folger and O'Brien, to each one-fourth.

And on the same day, viz., February 28th, 1867, your orator, as President of the said Individual Enterprise Company, but being actual owner thereof, executed a bill of sale of the said steamer "Champion," conveying the same to the said Cannon, Roberts, Folger and O'Brien, to each one-fourth. And on the same day, viz., February 28th, 1867, your orator entered into a bond of conveyance to the said Cannon, Roberts, Folger and O'Brien, in the penalty of one hundred and thirty thousand dollars, with the condition, that if your orator should, upon payment or tender of payment by the said Folger and O'Brien, or by their assigns, of the sum of twenty-five thousand dollars, on or before the fourth day of September, 1867, with interest thereon from the date of said bond, and upon their making and executing, or tendering themselves ready to make and execute a mortgage to your orator, or to his assigns, to secure the payment of the further sum of seven thousand five hundred dollars, on or before the fourth day of February, 1868, with interest thereon from the date thereof, make, execute and deliver to them, the said Folger and O'Brien, a bill of sale of a clear title to an undivided one-half interest in the said steamer "Samuel J.

Pentz," to each one-fourth; and with further condition, that if after the payment of the said Folger and O'Brien, or their assigns, of said sum of twenty-five thousand dollars, with interest, and securing the payment of said further sum of seven thousand five hundred dollars, with interest as aforesaid, upon the payment by the said Cannon and Roberts, or by their assigns, of the sum of thirty-two thousand five hundred dollars, on or before the fourth day of February, 1868, with interest thereon from the date of said bond, he, the said Samuel J. Pentz, your orator, should convey, or cause to be conveyed to the said Cannon and Roberts, or their assigns, a clean and unincumbered title to the remaining half-interest in said steamer "Samuel J. Pentz," to each one-fourth, then said obligation to be void, otherwise to remain in full force and virtue.

Upon the same day, viz., the 28th of February, 1867, after having executed said bills of sale and bond of conveyance, your orator entered into a covenant and agreement in writing, with the said Folger, O'Brien, Cannon and Roberts, wherein, after reciting said bills of sale and bond of conveyance, your orator stipulated, covenanted and bound himself to grant and confirm unto the said Folger, O'Brien, Cannon and Roberts, jointly, the exclusive control, management and running of the said steamers "Highland Light" and "Champion," until the fourth day of February, 1868, as the owners thereof, and also the exclusive control, management and running of the said steamer "Samuel J. Pentz," until the said fourth day of February, 1868, and that, too, as well of said boats themselves, as also of the appurtenances, and appointment of the officers, clerks and employés—your orator further agreeing that inasmuch as said steamer "Champion" was not then in running order, the said Folger, O'Brien, Cannon and Roberts should have the benefit, control and management of the steamer "Kent," for a period of five weeks. And by said agreement and contract, your orator

assigned, conveyed and confirmed unto the said Folger, O'Brien, Cannon and Roberts, jointly, all and each of the several wharf-rights and privileges, at each and all of the different landings upon the routes of said steamers, then known as the "Individual Enterprise Line of Steamers."

And upon the same day, viz., the 28th day of February, 1867, your orator made, executed and delivered to the said Folger, O'Brien, Cannon and Roberts, a bond in the penalty of twenty-five thousand dollars, that he would not directly or indirectly run any boat or steamer in opposition to the said steamers hereinbefore mentioned, upon the routes of the Individual Enterprise Company, viz., the Choptank River, Miles River, West River and Annapolis, and that he would not, either directly or indirectly, become interested in any such opposition to said steamers, or to the said Folger, O'Brien, Cannon and Roberts.

And your orator shows, that prior to said transactions, he had executed a bill of sale of said steamer "Samuel J. Pentz," to Thomas Swann, Enoch Pratt, James Hooper and George S. Brown.

And your orator further shows, the said bill of sale was intended simply as a mortgage to secure the payment to the said Swann, Pratt, Hooper and Brown, of the sum of fifty thousand dollars loaned by them to your orator.

And your orator further shows, that subsequently to said bill of sale to Swann, Pratt, Hooper and Brown, said sum of fifty thousand dollars having been fully paid and satisfied, your orator did, with the knowledge and assent of the said Cannon and Roberts, and in accordance with an agreement and understanding with them, the said Cannon and Roberts, and with the said Folger and O'Brien, cause said steamer "Samuel J. Pentz" to be conveyed by the said Swann, Pratt, Hooper and Brown, to the said Folger and O'Brien, by two several bills of sale, dated respectively the fourth day of September, 1867, and the fifth day of February, 1868, in the first of which bills of sale your orator himself also joined.

And your orator charges and avers, that the prices named in said bills of sale, as received for said steamers "Highland Light," "Champion" and "Samuel J. Pentz," were much below the real value, and that the special consideration for the transfer of said vessels and wharf-rights and privileges, and all of the good-will of said Individual Enterprise Line of Steamboats, was the agreement of the said Cannon, Roberts, Folger and O'Brien, hereinbefore stated, that your orator should retain a one-sixth interest in said steamers, and continue to receive one-sixth of the profits thereof. And that in accordance with the agreement hereinbefore mentioned, the said Cannon and Roberts did, on the same day of the transactions hereinbefore stated, viz., the 28th day of February, 1867, execute a declaration of trust, setting forth the facts hereinbefore charged of said agreement of your orator, with them, the said Cannon and Roberts, and with the said Folger and O'Brien, and acknowledging that your orator still owned a one-sixth of said steamers "Highland Light" and "Champion," and that they, the said Cannon and Roberts, held in trust for your orator, one-sixth part of said steamers "Highland Light" and "Champion," and that they would convey such interest to your orator on demand, by good and sufficient bills of sale, and account for and pay over to your orator, from time to time, one-sixth of the earnings of said steamers "Highland Light" and "Champion."

And your orator further charges, that said declaration of trust was made and executed with the full knowledge and assent of the said Folger and O'Brien, and in pursuance of the agreement with them hereinbefore charged ; and that it was further agreed, that your orator should have and retain such one-sixth interest and ownership, as well in the said steamer "Samuel J. Pentz," as in said steamers "Highland Light" and "Champion," and that said steamer "Samuel J. Pentz" was conveyed and trans-

ferred subsequently to the said Folger and O'Brien, as hereinbefore stated, upon the express understanding and agreement by them, the said Folger and O'Brien, that your orator should still retain such one-sixth interest and ownership therein, and continue to receive one-sixth of the profits and earnings thereof.

And your orator further charges, that in accordance with said agreement hereinbefore charged, the said Cannon and Roberts did, on the 28th day of February, 1867, sign an order upon the said Folger and O'Brien, to pay to your orator one-third of their profits from the said steamers "Highland Light," "Champion" and "Samuel J. Pentz," they, the said Cannon and Roberts, being then one-half owners of said steamers; which order the said Folger and O'Brien accepted and agreed to fulfil, as will appear from said order and acceptance.

And your orator further represents, that the said Charles K. Cannon transferred and conveyed his one-fourth interest and share in said steamers "Highland Light" and "Champion," to a certain George Dick, by two bills of sale, dated May 1st, 1868, and that on the 16th day of May, 1868, the said George Dick conveyed said one-fourth interest and share in said steamers "Highland Light" and "Champion," to the said Edward F. Folger and William L. O'Brien, by two bills of sale. That the said Thomas Roberts also conveyed his one-fourth interest and share in said steamers "Highland Light" and "Champion," to a certain Howard B. Ensign, by bills of sale dated the 27th day of November, 1868.

And your orator further charges, that said steamers "Highland Light," "Champion" and "Samuel J. Pentz," are now held and owned by the Maryland Steamboat Company of Baltimore, the said steamers "Highland Light" and "Champion" having been conveyed by the said Ensign, Folger and O'Brien, to the said Maryland Steamboat Company of Baltimore, by bills of

sale dated the 17th day of February, 1869, and the said steamer "Samuel J. Pentz," having been conveyed by the said Folger and O'Brien, and a certain Gilmor Meredith, to whom one-fourth therein had been previously conveyed, to the said Maryland Steamboat Company of Baltimore.

And your orator further charges, that said Maryland Steamboat Company is a body corporate, duly incorporated under the laws of the State of Maryland, and that the said Folger, O'Brien, Roberts, Ensign and Meredith are the directors thereof, and that the said Folger is president of said body corporate, the said Ensign, treasurer, and the said Roberts, superintendent, and that the said Folger and O'Brien own the largest portion, if not all, of the stock of said Company.

And your orator further charges, that the said Howard B. Ensign and Gilmor Meredith took whatever interest they may have acquired in said steamers nnder the bills of sale to them, with notice of the rights and interests of your orator in said steamers, and subject to such interest, and that the said Folger, O'Brien, Roberts, Ensign and Meredith are the sole stockholders in said Maryland Steamboat Company of Baltimore, and that therefore the said Maryland Steamboat Company of Baltimore had notice of the interest, share and claim of your orator in said steamers "Highland Light," "Champion" and "Samuel J. Pentz," and took said steamers subject to such interest and claim of your orator, as hereinbefore set forth.

And your orator further charges, that the said Cannon has departed this life, and that letters of administration upon his estate have been granted to Charlotte E. Cannon, of Baltimore City.

And your orator further charges, that the said Folger, and O'Brien and Roberts have entirely neglected and refused to perform their said agreement, and convey to your orator his one-sixth interest in said steamers "High-

land Light," "Champion" and "Samuel J. Pentz," as agreed, as hereinbefore charged by or to account for and pay over to your orator his one-sixth share of the earnings and profits thereof, although he has often requested them so to do.

The bill then prays that an account may be taken, under the direction of this Court, of the earnings and profits of the steamers "Highland Light," "Champion" and "Samuel J. Pentz," since the aforesaid twenty-eighth day of February, 1867, and that such amounts of said earnings and profits as may be found due to your orator from the said Cannon, Roberts, Folger and O'Brien, or from the said Maryland Steamboat Company of Baltimore, or from any of them, may be paid unto your orator, and that the said Folger and O'Brien and Roberts may be compelled by decree of this Court to convey to your orator one-sixth of each and all of said steamers "Highland Light." "Champoion" and "Samuel J. Pentz," or to account for and pay over to your orator one-sixth of the value of said steamers, and that the said Maryland Steamboat Company of Baltimore may likewise be required to account unto your orator and pay over to him one-sixth of the earnings and profits of said steamers "Highland Light," "Champion" and "Samuel J. Pentz," from the time said steamers came into the possession of said Company, and that said Maryland Steamboat Company of Baltimore, may be decreed to convey to your orator one-sixth interest and share in each and all of said steamers "Highland Light," "Champion" and Samuel J. Pentz," and for further relief.

The declaration of trust referred to in the bill is as follows:

Declaration of trust, made this twenty-eigth day of February, in the year eighteen hundred and sixty-seven, by Thomas Roberts, of Baltimore County, in the State of Maryland, and Charles K. Cannon, of Baltimore City and

APRIL TERM, 1878.    573

O'Brien *vs.* Pentz.    Roberts *vs.* Same.    Alford and Smith, Adm'rs *vs.* Same.

said State, of the one part, and in favor of Samuel J. Pentz, of said City and State, of the other part:

Whereas, by two absolute bills of sale dated the 28th day of February, A. D. 1867, one from Samuel J. Pentz and the other from Samuel J. Pentz, President of "The Individual Enterprise Company," the said Roberts and Cannon have become owners of one-half interest in each of the steamboats "Highland Light" and "Champion," and which bills of sale have been so executed at the request of Edward F. Folger and William L. O'Brien, with whom the said Cannon and Roberts have formed an association to run said steamboats, they owning the other half interest therein, and not desiring that the name of said Pentz shall at present appear on the face of said papers.

And whereas, said Pentz still owns one-sixth of said steamboats, not having sold to said Cannon and Roberts any other interest therein to entitle them to more than one-sixth of said steamboats, but has executed said bills of sale, for the reasons and at the request aforesaid, as a temporary matter and upon the understanding that this paper should be executed, the agreement to execute this instrument being a condition precedent to the execution by said Pentz of said two bills of sale.

Now we, the said Thomas Roberts and Charles K. Cannon, in consideration of the premises, and for a valuable consideration to us in hand paid at the execution hereof by the said Pentz, do hereby declare that we have sold to said Pentz, free of all incumbrances, and received from him the payment of one-sixth of each of said steamboats "Highland Light" and "Champion;" and that we hold in trust for said Samuel J. Pentz, and his representatives and assigns, and to be in nowise impaired or incumbered, one-sixth of each of said steamboats "Highland Light" and "Champion," and that we will convey and assign on demand to him and them the aforesaid sixth interest unimpaired and unincumbered in each of said steamboats, by a good and sufficient bill of sale.

And we further declare, that all of the earnings, profits, income and emoluments of said steamboats, to the extent of one-sixth thereof, net, shall enure to and belong to said Samuel J. Pentz, his representatives and assigns, and that we will from time to time as requested, pay over the same to him and them.

Witness our hands and seals.

THOMAS ROBERTS,      [Seal.]<br>
CHARLES K. CANNON,   [Seal.]

Test :—*John Carson.*

The order of Cannon and Roberts upon Folger and O'Brien, referred to in the bill is as follows :

BALTIMORE, February, 28th, 1867.

Messrs. Edward F. Folger, William L. O'Brien,

*Gentlemen :*—In pursuance of an agreement entered into between Samuel J. Pentz and ourselves, and which is irrevocable without his consent, you are hereby directed to pay over to him as fully and at the times we are entitled to be paid the same, one-third of our profits from the steamboats, " Samuel J. Pentz," " Highland Light," and " Champion."

Signed—CHAS. K. CANNON,<br>
THOMAS ROBERTS.

BALTIMORE, February 28th, 1867.

We accept the above order and agree hereafter to fulfil the same.

Signed—EDW. F. FOLGER,<br>
WM. L. O'BRIEN.

After the case was at issue and most of the testimony taken, the following agreement was made between the complainant and Folger, Roberts and O'Brien :

It is agreed that the testimony which has been, or may hereafter be taken, may be used in reference to the state of

accounts between Roberts and Pentz, growing out of their connection with, or interest in any steamers whatsoever, and that anything found to be due by Pentz to Roberts, or to Folger and O'Brien, as his assignees, may be set off against anything due by Roberts, or by Folger and O'Brien to Pentz. And it is further agreed, that the answers may be considered as cross-bills, and that a decree may be rendered in favor of any party or parties to this proceeding, whether complainant or defendant, for such amount as on a proper accounting, the Court may think them entitled to. All parties reserving the right of appeal.

The Court below, (GILMOR, J.) passed a decree upholding the secret trust referred to in the proceedings, and declaring that Folger and O'Brien had knowledge of, and assented to said trust, and referring the case to the auditor to state an account between the parties, other than Howard B. Ensign and Gilmor Meredith, as to whom the bill was dismissed. From this decree the present appeals were taken.

The causes were argued before BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*John Carson* and *John H. Thomas*, for the appellants.

*Stewart Brown* and *F. W. Brune*, for the appellee.

STEWART, J., delivered the opinion of the Court.

The bill in this case admits, that an open, legal and *bona fide* contract was made between the complainant and Folger, O'Brien, Cannon and Roberts, to transfer to the latter all the title of the former, to certain steamers in the said contract referred to ; but it seeks to have established the provisions of a secret trust, which the bill first alleges was made between complainant and all of the others of the said parties ; but afterwards modifies such averment by charging that such secret contract and trust were made

between the complainant and Cannon and Roberts, with the knowledge of Folger and O'Brien.

That, by this arrangement, although the property in the said steamers had been ostensibly sold and transferred to the said parties, the complainant really retained one-sixth of the same, and now seeks a recovery accordingly.

Such claim on the part of the complainant places the parties in a very different position from the open one indicated by the public records of the transaction.

If sustained, the complainant is to a certain extent, shielded from full responsibility for losses and other liabilities. Its establishment by a Court of equity under the circumstances, would seem to require the most satisfactory and conclusive evidence of its entire legality and justice.

We do not understand the testimony as proving that Folger and O'Brien so comprehended the transaction ; and if it could be sustained against Roberts and Cannon, that the former are to be held responsible as contracting parties thereto, or as affected with the knowledge thereof.

The secret method of undertaking to secure such right for the complainant, does not strike us as calculated to impress a Court of equity with its entire *bona fides*.

Holding out to the world by placing upon the public record the evidence required by the law, to make known to all the true ownership of the property, but by a contemporaneous secret arrangement between the parties attempting to avoid such conclusion, and in effect treating the record as presenting an erroneous and false view, would seem to be against the principle of public policy.

What is it in truth but a fraud upon the public, to undertake to pursue the requirements of the law, making the public record evidence of the transfer of title, as a mere pretext, the more effectually to accomplish the secret scheme of the complainant, to secure rights for himself in utter antagonism to the open and published contract between the parties ?

The undisguised and undisputed contract between the complainant and Folger and O'Brien, is in utter conflict with the provisions of this secret trust set up in the bill. The two cannot stand together, or the one be modified or qualified by the other, upon the proof that has been adduced.

There is no principle to justify a Court of equity in upholding the secret contract to the prejudice of the other.

The recognition of the private arrangement made between some of the parties, as alleged, to the exclusion or modification of the open and avowed contract, recognized by all of the parties, would be a strange perversion of the well settled principle applicable in such cases.

If this secret contract was made before the open transfer of the property, it would be superseded thereby ;—if after, it was made without consideration and *nudum pactum*.

The interposition of a Court of equity in granting relief by the enforcement of the specific performance of any contract, is not a matter *ex debito justitiæ*, and to warrant its interference, the terms thereof must be fair, and it must be founded on an adequate consideration, and be made under circumstances commending it to the favorable apprehension of the Court. The party seeking its execution must, at the same time, be able to show that he has fully, not partially, performed every thing to be done on his part.

The contract must also be mutual and equal in all its parts, and having no circumstances of suspicion as to its *bona fides*.

Its terms must not be ambiguous, and they must be accurately stated in the bill, and the proof must correspond therewith, so as to leave no room for reasonable doubt, but be such as will enable the Court to measure out exact justice to the parties.

The Court cannot undertake to amend the contract, or if it be performed in part by the complainant, leaving

578 MARYLAND REPORTS.

O'Brien *vs.* Pentz.   Roberts *vs.* Same.   Alford and Smith, Adm'rs *vs.* Same.

other parts unperformed, and without any tender of performance on his part, it cannot be carried out in part, and adjusted to that extent.

It must be executed as an entirety, and cannot be arranged in parts.

In every case the question must be, whether the exercise of the power of the Court is demanded to subserve the ends of justice, and unless the Court is satisfied that it is right in every respect, it refuses to interfere. *Geiger vs. Green,* 4 *Gill,* 472; *Waters vs. Howard,* 8 *Gill,* 262; *Semmes vs. Worthington,* 38 *Md.,* 298.

How does the contract with its surroundings relied upon here, stand the application of these well established tests?

The complainant has totally failed to present such a contract for the intervention of the Court; and as set out in the bill has not been sustained by full and adequate proof.

The complainant has not shown that he has performed his part of the same, and there is a total failure to show that Folger and O'Brien were aware of the alleged agreement between complainant, Cannon and Roberts, or that they had notice of the same.

The contract between Pentz, the complainant, and Cannon and Roberts seems to have been industriously kept a secret, and is incapable of standing the ordeal of equitable examination.

In its very inception the witness thereto, recognized as a guard to its fairness and authenticity, did not see the parties execute the same; but inadvertently attested it upon the representations of others.

Obscure and doubtful in its origin, there is no clear light from surrounding circumstances, to show its precise outlines and entire fairness.

Considered in reference to the illiterate character of one of the ostensible contracting parties, Roberts, it lacks that full comprehension of its import on his part, recognized by the law to give to it full scope and effect.

Roberts proved to have been an uneducated person, having had unbounded confidence in the complainant, whilst admitting that he signed the papers, supposing they were intended to be executed for another purpose, denies that they were ever read over to him or that he understood their purport as now insisted upon.

The witness as has been stated, cannot testify that they were read over to him or that he understood their meaning.

Under such circumstances there is an absence of sufficient proof of the execution of the papers, with knowledge on the part of Roberts of their contents.

There is no adequate proof that their existence was known to Folger and O'Brien or that they were cognizant of the purport thereof.

The order for payment of part of the earnings of the steamers, from Roberts and Cannon to complainant, which they accepted is totally insufficient to establish such knowledge.

To affect them with knowledge of the obligations of the contract, there ought to have been abundant proof that they were apprised of the contents a mere speculation or conjecture that it might have been so, is not sufficient.

After the full proof that they had persistently refused to be concerned with the complainant, and strenuously objected to his having any interest in the boats, or that he should hold any right thereto, legal or equitable, it is not a fair presumption that they had acquiesced in any such arrangement; on the contrary its execution was in bad faith to them and in conflict with the title the complainant had conveyed.

That they might afterwards agree to have complainant connected therewith, might be true, or a mere statement to soothe the pride of the complainant. It has no force and effect as importing knowledge—on the contrary, conveys quite a different inference.

To rebut the necessary legal effect of the transfer of the title, there ought to have been the clearest proof of the modification of the contract in any respect.

It seemed to have been ostensibly between Pentz, Cannon and Roberts, and such a secret understanding between them cannot be held to bind Folger and O'Brien, without corroborating testimony to that effect.

It appears, there were unsettled accounts between the complainant and Cannon and Roberts, growing out of the management of several steamboats held by them, in different proportions of interest ; the books relating thereto furnish no very reliable information as to the relative indebtedness of the parties or their exact individual interest in the boats.

The complainant was the active manager, either individually or as president of The Individual Enterprise Line — received the profits of the steamers, from their earnings, sale, or insurance money.

The other parties also received moneys from time to time from the concern, but what was their precise indebtedness does not appear from the books or accounts, or from any settlements made.

Under the circumstances, it was primarily the duty of the complainant to have caused accurate accounts to be kept, showing at all times the condition of the business intrusted to his control and supervision.

And after the alleged contract was made, it was his duty to have industriously applied himself to the ascertainment of the relative indebtedness of the parties.

After their affairs had become involved in embarrassment, it seems it was deemed advisable to make sale of the steamers, or some part of them.   Folger and O'Brien proposed to become purchasers of an interest, but did not desire to have the complainant associated as part owner of the boats, or to have any connection with the management thereof.   The complainant agreed to sell out his interest to Folger, O'Brien, Cannon and Roberts.

The contract was made accordingly, between complainant and the said parties, and Folger and O'Brien paid to complainant $30,000, for his half interest in the Highland Light and the whole of the Champion—the other half in the latter was conveyed to Cannon and Roberts.

The S. J. Pentz having been mortgaged by complainant, it was stipulated that Folger and O'Brien were to pay $32,500 for one-half of her, with unincumbered title, and the other half to belong to Cannon and Roberts, when they had paid for her.

The complainant having received the value of the S J. Pentz, estimated at $65,000 and his half of the Highland Light, $17,500, the whole estimated to be worth $35,000, and $12,500 on the Champion, estimated at $25,000, was in possession of funds therefrom to the amount of $95,000, and this from the concern, which had concluded to sell out. He then had no remaining interest unpaid for, except one-half of the Champion, $12,500, she being estimated at $25,000. The other parties were to pay for the Pentz and to hold the Highland Light and Champion, in equal proportions. Roberts and Cannon so far as they were concerned, assuming they were otherwise square with complainant, would each owe him one-half of that amount, $6,250.

But the papers relied upon by complainant, propose to give to complainant one-sixth interest in the entire three boats and their profits, and the only equivalent for this, is the half due him on the Champion, $12,500. That is, complainant's claim is to one-sixth of the three boats, to wit: S. J. Pentz, $65,000 ; Highland Light, $35,000, and Champion, $25,000, aggregating $125,000, being $20,833, according to the estimate *in* the *corpus*.

The inequality of such a trade is so palpable, that it is represented by the bill, that the valuation is low—if so, the one-sixth corresponds therewith.

It is further stated or argued that the wharf-rights and privileges, and the good-will of the concern, enhance the

value ; but as to this also, the proposed contract of complainant calls for one-sixth.

But there is no evidence that the boats or property, were worth over the estimate, and probably complainant made a good sale, even if the one-sixth now claimed is refused him.

The contract in all its parts does not seem to be equal, and we discover nothing in it, to commend it to the favorable consideration of the Court, for its specific enforcement, if there were no other objection to it, except its inequality towards Cannon and Roberts.

There certainly is no glaring injustice done to complainant, if he fails to have it executed ; on the contrary, much injustice would be done to the respondents by its enforcement.

It has been agreed by the parties, that anything found due by complainant to Roberts, or to Folger and O'Brien, his assignees may be set off against anything due by Roberts, or by Folger and O'Brien to him.

That the answers may be treated as cross-bills, and that a claim may be rendered in favor of any party to this proceeding, complainant or defendant, for such amount as on a proper accounting, the Court may think them entitled to.

The books and accounts have been so loosely kept, that it seems they furnish no definite *data* of the state of the indebtedness of the different parties.

Roberts claims for larger interest in the former steamers held by the parties, Pentz, Cannon and Roberts, and the proof also shows that he received considerable amounts from the concern.

Under the open contract between complainant, Cannon and Roberts on the one side, and Folger and O'Brien, Cannon and Roberts on the other, the latter get one-half of the steamer Champion, besides their interest in the Highland Light.

From the lapse of time, and the obscurity as to the precise condition of their affairs, which the testimony has not satisfactorily elucidated, we find no sufficient ground for changing the condition the parties have made for themselves, under the contract between complainant, and Folger and O'Brien, Cannon and Roberts, and no reliable ground upon which to base a decree, affirming the indebtedness of one to the other.

The bill of complaint, and the answers treated as cross-bills under the agreement, will be dismissed.

*Decree reversed, and*
*bills dismissed.*

(Decided 3rd May, 1878.)