# CIRCUIT COURT OF BALTIMORE CITY.

Filed January 2, 1902.

## CHARLES BECKER
### VS.
## WILLIAM H. MATTHAI AND ROBERT MAGRUDER.

*Edgar H. Gans* and *W. Calvin Chesnut* for plaintiff.

*John C. Rose* for defendants.

RITCHIE, J.—

The bill in this case alleges that on July 18th, 1900, the defendant Magruder, acting through his agent, D. Barton Marshall, agreed to sell to the plaintiff the lot of ground situated in Baltimore County, at the northwest corner of Park Heights avenue and Clark's lane. It further alleges that, notwithstanding said agreement, and with full knowledge of the same, the defendant Matthai thereafter purchased the said lot from Magruder, and the same has been conveyed to him by said Magruder.

The bill prays that said alleged contract with the plaintiff may be specifically enforced, and that Matthai may be required to unite with Magruder in a deed to the plaintiff of said property.

The memorandum of the alleged contract of sale to the plaintiff was signed by Louis Becker, his agent, with whom all negotiations were had, and in the name of the defendant Magruder by Marshall, who was the real estate broker employed by him.

Magruder alleges that the property was in Marshall's hands only for the purpose of finding some one willing to purchase, and he denies that Marshall had any authority to make a sale, or to sign the memorandum on his behalf, and Magruder and Marshall both allege that the deed to Matthai was made in pursuance of an oral contract of sale between them, made prior to the alleged contract between the plaintiff and Magruder.

There is a good deal of testimony tending to show the existence of the said prior oral contract, and also tending to show that, if there was such a contract, there was either a rescission or a novation of it. But in the view which I take of the case it is not necessary to consider any transactions between Magruder and Matthai.

The lot in question together with other property belonging to Magruder in the same vicinity was for sale, and prior to any of the transactions referred to in the testimony, was placed in the hands of Marshall. It was so placed without any instructions as to price or terms, and there is no evidence to show that Marshall was clothed with any special authority, or possessed any authority in the premises other than such as any real estate agent possesses, when property which is for sale is placed in his hands for the procurement of a purchaser.

In February, 1900, Marshall received an offer of $3,000 for this lot; he reported the offer and it was declined. On July 14th, 1900, Marshall wrote to Magruder, asking if he would accept $3,300, and Magruder replied on the 17th, that he would. Marshall thereupon made the alleged oral contract for the sale of the lot with the plaintiff's agent, and on July 24th, he reported to Magruder that he had sold it for $3,300. Two letters were then exchanged between Marshall and Magruder, in respect to the title to the property, and on August 3rd, Magruder wrote to Marshall, reminding him that he had not yet disclosed the name of the purchaser, and stating that he presumed it was some one who would not be objectionable.

On receipt of Marshall's reply saying that the plaintiff was the purchaser, Magruder, on August 9th, wrote to Marshall asking what was the business of the plaintiff, and further saying that he would, under no conditions, sell to any one who might put up a "road house" on the property, and that a restriction against the erection of such a house must be inserted in the deed.

On the receipt of this letter Marshall, on August 10th, wrote to Louis Becker, the agent of the plaintiff, telling him to call the next day and make some payment on the lot "in order that I may legally bind Magruder to the terms of sale." Louis Becker called next day and paid $10 on account, and the memorandum of sale in question was then signed by them. Marshall testifies that his object in seeking to bind Magruder by the memorandum was "to complete a sale" which he (Marshall) had made to the plaintiff; "I wanted," he says, "the contract bound so that there would be no ques-

tion as to my commissions—to close the deal." Tes. p. 67.

Louis Becker knew when he signed the memorandum that Magruder had instructed Marshall that he would not sell to any one unless the restriction referred to was inserted in the deed.

Two questions arise on these facts: First, has a real estate broker under his general powers authority to bind his employer by signing the memorandum of sale? Second, if he has, had Marshall the power to sign Magruder's name to this memorandum at the time when he so signed it?

The answer to the second question seems to be so clear that it is not necessary to discuss the first, and an affirmative answer to the first may be assumed for the purposes of this case. Assuming, then, that a real estate broker has, within the usual scope of his powers, authority to sign the memorandum of sale, he of course has no such authority after his agency has been revoked. It is equally clear that if the powers of a general agent have, to the knowledge of the party with whom he is dealing, been limited by special instructions, he has no power to bind his principal by any act in violation of such instructions.

Assuming that Marshall at the time of the oral contract had authority to sign the memorandum on behalf of Magruder, he nevertheless did not then do so. The oral contract stood for what it was worth, but after the instructions of August 9th he had no authority to do any *further* act in the premises which would violate those instructions. To that extent his authority had then been limited or revoked.

Here before the memorandum was signed, Marshall, to the knowledge of the plaintiff's agent, had been expressly instructed by Magruder that he would not sell to any one unless the restriction referred to was inserted in the deed, and after this he had no authority to sign or accept a memorandum which failed to provide for the restriction in question. Magruder therefore is not bound or in any way affected by the memorandum set up.

Elliott vs. Barrett, 144 Mass. 256.

Browne Stat. Frauds, Sec. 370.

It is urged by the plaintiff, however, that, even if the memorandum set up in his bill, and therein relied on as the written evidence to prove the alleged contract, be void, there is nevertheless sufficient evidence to be found in the correspondence to prove it. Conceding for the purposes of the case that the correspondence shows an agreement by Magruder to sell, it shows no agreement by the plaintiff to buy. His oral agreement to buy as shown by the testimony is of course within the statute of frauds, and could not be enforced against him.

The question then is, can the plaintiff who has not signed a contract which is within the Statute of Frauds, obtain a decree for specific performance against the defendant who has signed? I find no case in Maryland where a plaintiff who had not signed claimed the right to a specific performance on the ground that the contract was one within the statute, but from the principles established in numerous cases, it is settled in this State that a court of equity will not decree a specific performance of such a contract as is here alleged in favor of the party who has not signed it, against the one who has signed, because it lacks mutuality in respect both of obligation and remedy.

The general rule is that equity will not decree the specific performance of a contract unless there is, at the time when it is made, a mutuality of legal obligation, and also a mutuality in the right to this equitable remedy.

In England and in most of the States of this country where the Statute of Frauds is in force, it is held that agreements which by the provisions of that statute must be in writing, constitute one of the exceptions to the general rule above stated, and that the plaintiff who has not signed the contract or memorandum may nevertheless obtain a decree for specific performance against the defendant who has signed.

The cases which support this exception do not agree as to the grounds upon which it rests. One line of authorities asserts the doctrine that, as the statute requires only the signature of the party to be charged, mutuality of legal obligation and of remedy is not necessary in this class of cases. In the other line of authorities the doctrine is, that by filing his bill, the plaintiff, who has not signed, thereby tenders himself ready to perform the contract on his part and assumes its

obligation, and thus supplies the necessary mutuality of obligation and of remedy. Thus one line of these cases ignores the lack of mutuality altogether, and the other fails to meet the requirement that mutuality of obligation and of remedy should exist at the time the contract is made, while the inequitable feature common to both is, that the contract is enforceable *if the party who has not signed wants it enforced, but not otherwise*. It is enforceable or not at his election.

The exception in question violates the rule applied to other contracts without giving any satisfactory reason for distinguishing between contracts that are within the statute and those which are not. As said by Pomeroy in his work on Specific Performance, it has been arbitrarily laid down and rests on no basis of principle, Sec. 170.

For a review of the subject see:

Pom. of Spec. Per., Secs. 162 to 170.

Fry, Secs. 470-1.

A. L. Reg. for Oct. 1901, pp. 559-571.

This qualification of the general rule has never been recognized in Maryland. Our Court of Appeals in Geiger vs. Green, 4 Gill 472, adopted, and in later cases has again approved, the views of Lord Redesdale in Lawrenson vs. Butler, 1 Sch. & Lef. 18, and ever since Geiger vs. Green it has been the established doctrine in this State that a court of equity will not decree the specific performance of a contract, which is executory on both sides, such as the one now being considered, unless the agreement is obligatory upon both parties, so that either could enforce it against the other. It was expressly decided in Duval vs. Myers, 2 Md. Ch. 401 (which has been repeatedly approved by the Court of Appeals and as late as 92 Md.), that the tender of performance made in his bill, by a party who is not bound by the agreement, will not supply the necessary mutuality. The mutuality of obligation must be found in the agreement. If there is an inequality of obligation the plaintiff will be left to his remedy at law.

Notwithstanding the great weight of authority elsewhere in support of it, the decisions of our Court of Appeals are irreconcilable with the doctrine that contracts within the Statute of Frauds constitute an exception to the general rule requiring mutuality of obligation in the contract and in the right to specific performance, at the time the contract is made.

See also:

Tyson vs. Watts, 1 Md. Ch. 13, affirmed 7 Gill 124.

Rider vs. Gray, 10 Md. 282-5.

Gelston vs. Sigmund, 27 Md. 334-344.

King vs. Warfield, 67 Md. 246-249.

Dixon vs. Dixon, 92 Md. 432-440.

The bill will be dismissed.