IDA LOUISA HENSEL

*vs.*

WILLIAM J. CALDER.

*Sale of Land—Specific Performance of Contract—Lack of Mutuality.*

Specific performance of a contract for the sale of land will not be refused on the ground that, by reason of plaintiff purchaser's failure to sign the contract of sale, as was done by defendant vendor, there is a lack of mutuality.       pp. 490-494

That the Statute of Frauds was relied on in the answer will not justify the court in refusing specific performance, on the theory of lack of mutuality, merely because the written contract was signed by defendant and not by plaintiff.       p. 494

*Decided January 13th, 1920.*

Appeal from the Circuit Court No. 2 of Baltimore City (DOBLER, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*William J. Ogden,* for the appellant.

*Stephen W. Leitch* and *Chester A. Albrecht,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a decree of Circuit Court No. 2 of Baltimore City requiring the appellant to convey to the appellee certain leasehold property in accordance with a contract executed by her.

The bill alleges that the defendant (appellant), acting through her duly authorized agent, entered into an agreement with the plaintiff on the 13th of February, 1919, whereby she sold to the plaintiff the leasehold property known as No. 224 North Carey street, in Baltimore City, subject to an annual ground rent of $120, at and for the sum of $1,450.00, $20 of which was paid by the plaintiff "in cash" on the same day; that it was further agreed and understood that the balance of the purchase-money would be paid by the plaintiff within a reasonable time upon the execution by the defendant of a good and sufficient deed for the property, and that on said date the defendant, through her said agent, executed and delivered to the plaintiff a paper writing or memorandum of said agreement setting forth the terms and conditions thereof; that the plaintiff was and had always been ready, willing, anxious and able to perform his part of the agreement, and had so notified the defendant and demanded of her the execution of a deed for said property, but that the defendant had notified the plaintiff that she did not intend to perform her part of said contract. The bill prayed for a decree for specific performance of the contract. The "paper writing" or memorandum referred to and filed with the bill as exhibit B. is as follows:

"Baltimore, Feb. 13, 1919.
"Received of Wm. J. Calder Twenty 00/100 Dollars Deposit acct. purchase house 224 N. Carey St.
"Price, $1,450.00

"Ida L. Hensel,
"$20.00/00                         per P. L. Hensel."

The defendant in her answer admits that her brother, P. L. Hensel, was authorized by her to enter into an agreement

with the plaintiff for the sale of the property referred to at
the price stated in the bill, and that $20 was paid "in cash"
by the plaintiff to her brother, who gave the plaintiff the re-
ceipt therefor, but she denies that any contract of sale "bind-
ing upon both" the plaintiff and defendant was executed by
the parties named, and alleges that the "paper writing" re-
ferred to, exhibit B., does not contain any promise by the
plaintiff to purchase said property and to pay the balance of
the purchase price "as is required to make a valid contract
of the kind by the Statute of Frauds." The answer denies
that the plaintiff had always been ready and willing to per-
form his part of the agreement, and alleges that after the
date of the receipt the plaintiff notified her, through her sis-
ter, that if he did not succeed in securing a mortgage for the
necessary money to purchase the property the deal would be
off, and also alleges that the paper writing "containing the
alleged contract" is "not mutual, but is unilateral and not
binding in any way upon" the plaintiff, and that he is not
entitled to a decree for the specific performance thereof.

The evidence shows that the plaintiff, at the request of the
defendant, went to see her brother about purchasing the prop-
erty, and that he and defendant's brother, who acted as her
agent, entered into an agreement by which defendant agreed
to sell the property mentioned to the plaintiff and the plain-
tiff agreed to purchase it at the price of $1,450.00; that he
paid defendant's brother $20.00 on account of the purchase
price and agreed to pay the balance as soon as the attorney
for the building association, which was to furnish the money,
could examine the title and prepare the deed; that the defend-
ant's brother gave the plaintiff the receipt or memorandum
referred to; that the attorney for the building association
obtained from the defendant the ticket for her deed, which
was "in the Court House," on the 18th of February, and that
he then completed the examination of the title, prepared the
deed and notified the defendant that he was ready for the
transfer of the property.

The execution of the agreement or memorandum thereof by the defendant is admitted in her answer, but she denies the plaintiff's right to relief on the ground that as he did not sign it it cannot be enforced against her. While admitting that the Statute of Frauds does not require a contract for the sale of an interest in land to be signed by both parties, but only by the party sought to be charged, the learned counsel for the defendant insists that where the statute is relied on in the answer, a court of equity will not at the instance of the party who did not sign such a contract decree specific performance against the party who did sign, and who could not enforce it against the party who did not sign, because of the lack of mutuality in the contract. In support of this contention he cites and relies upon the case of *Dixon* v. *Dixon,* 92 Md. 432. A careful examination of that case will show, however, that it does not go to the extent claimed. There the bill was filed by the vendors against the vendees, and CHIEF JUDGE McSHERRY was considering the demurrer to the bill, which assailed the sufficiency, certainty and mutuality of the agreement relied on. That contract, according to the averments of the bill, consisted entirely of the written *acceptance,* signed by the vendees, of an offer to sell, and he said: "As the bill does not disclose what the *offer* contained it does not in fact disclose what the contract of sale was; and in legal effect the plaintiffs asked not for the specific enforcement of a disclosed contract, but for the enforcement of the acceptance of an undisclosed *offer.* It may be when the offer and acceptance are brought together that a definite and certain agreement will be evidenced, but that is not the situation confronting us, because it is but *part* of the agreement relied on in the bill. That which is declared by the third paragraph of the bill and by the exhibit to be the agreement between the parties is manifestly vague and uncertain, and it is *that* agreement, and not some undivulged one, which the bill seeks to enforce." Turning to the question of mutuality of the contract, and having before the Court only the accept-

ance, vague and uncertain in its terms, and not the offer, he said further; "Where there is an inequality of obligation it is proper to refuse a specific performance and the plaintiff should be left to seek compensation at law. * * * Remembering that we are dealing only with the agreement embodied in the acceptance because that is the only agreement relied on in the bill; and bearing in mind that we are still considering the demurrer, what possible right would the appellants, the purchasers, have, under that acceptance, to compel the appellees, the vendors, to convey the property? Where in that acceptance is there any obligation or stipulation upon the part of the vendors binding them to convey the property or indicating what title or estate they should convey? Could the purchasers without having recourse to the offer, and without setting forth the offer as part of the agreement, but relying solely on the acceptance, compel the vendors to make a conveyance? There can be but one answer to this question, and that answer must be in the negative. If then, this be so, how can the party *not* bound procure from a Court of Equity a decree requiring the other party to perform? The want of mutuality in the contract, as that contract is relied on, presents an insuperable bar to its being specifically enforced." It is perfectly apparent from the above that JUDGE McSHERRY was not dealing with the fact that the vendors had not *signed* the agreement relied on, or any question of the lack of mutuality by reason of *that* fact, for in the next sentence he says: "This defect of the want of mutuality may, however, be remedied by appropriate amendment if the offer to sell and the acceptance when taken together make a definite and mutually binding agreement," and the decree of the lower Court was accordingly reversed and the case remanded. The lack of mutuality of the kind referred to in that case is illustrated by the cases of *Tyson* v. *Watts*, 1 Md. Ch. 17, and *King* v. *Warfield*, 67 Md. 249, to which JUDGE McSHERRY referred, where the contracts, though signed by *both parties,* conferred only a privilege upon one of the parties,

which he was not bound to exercise, or the obligation of one of
the parties was conditional upon the happening of an event. It
is true, the opinion does contain the following quotation from
*Duvall* v. *Myers,* 2 Md. Ch. 401, "A party not bound by the
agreement itself, has no right to call upon the judicial au-
thority to enforce performance against the other contracting
party by expressing his willingness to perform his part of
the agreement. His right to the aid of the Court does not
depend upon his subsequent offer to perform the contract on
his part when events may have rendered it advantageous to
do so, but upon its original obligatory character." But that
he did not mean that that quotation was applicable to a case
like the case at bar is shown by what we have already said,
and his further statement: "Wherever, as a general proposi-
tion, the contract is from any cause incapable of being en-
forced against one party, that party will not be permitted to
enforce it against the other. Both parties must have a right
to compel specific performance *at the date of the decree,* or
neither will have it." The alleged contract sought to be en-
forced in *Duvall* v. *Myers, supra,* was a peculiar one. The
name of the purchaser of the wood or timber nowhere ap-
peared in the instrument, and the Chancellor said: "The
paper says, 'I have sold.' Who has sold? Who is the party
who has contracted with the defendant? The paper does not
inform us, and it may as well be any one else as Duvall.
Where then, in the agreement, which he seeks to have specific-
ally executed against the defendant, is the reciprocal obliga-
tion on his part?" The Chancellor relied upon the cases of
*Geiger* v. *Green,* 4 Gill, 472, and the statement of LORD
REDESDALE in 1 *Sch. & Lef.* 18. When we turn to *Geiger* v.
*Green,* we find it is a case like *Tyson* v. *Watts, supra,* where
the contract was signed by both parties but conferred only a
*privilege* upon one of the parties without any obligation on
his part, and when we examine the English cases we find that
the later decisions refuse to follow the suggestions of Lord
Redesdale "that a court of equity, at least, ought not to en-

force a contract in relation to real property at the instance
of the party who did not sign, against the party who did."
CHANCELLOR KENT, in *Clason* v. *Bailey,* 14 Johns 484, after
reviewing the English cases, said : "There is nothing to dis-
turb this strong and united current of authority, but the ob-
servations of LORD CH. REDESDALE in *Lawrenson* v. *Butler,*
1 Sch. & Lef. 13, who thought that the contract ought to be,
mutual, to be binding, and that if one party could not en-
force it, the other ought not. * * * I have thought, and have
often intimated, that the weight of argument was in favor,
of the construction that the agreement concerning lands, to
be enforced in equity, should be mutually binding, and that
the one party ought not to be at liberty to enforce, at his
pleasure, an agreement which the other was not entitled to
claim. It appears to be settled (*Hawkins* v. *Holmes,* 1 P.
Wms. 770), that though the plaintiff has signed the agree-
ment, he never can enforce it against the party who has not
signed it. The remedy, therefore, in such case, is not mutual.
But, notwithstanding this objection, it appears from the re-
view of the cases, that the point is too well settled to be now
questioned." See also note in 28 L. R. A. (N. S.) 680,
where the cases are collected.

In the case of *Thomas* v. *The G.-B.-S. Brewing Co.,* 102
Md. 417, where the suit was for the specific enforcement of
an option that, at the time of the bringing of the suit, had
been closed, and where it was contended that the agreement
could not be enforced because of the want of mutuality in the
agreement at the time it was executed, CHIEF JUDGE MC-
SHERRY repeats the statement he made in *Dixon* v. *Dixon,*
*supra,* that both parties must have the right to compel specific
performance *at the date of the decree,* and referring to the
case of *Duvall* v. *Myers, supra,* which he said was clearly dis-
tinguishable from the case then under consideration, he quotes
the statement of the Chancellor which we have quoted in ref-
erence to the fact that the name of the plaintiff nowhere ap-
peared in the contract sought to be enforced.

The question raised by the contention of the appellant in this case was considered and disposed of in the case of *Engler* v. *Garrett,* 100 Md. 387, where the suit was by the vendee for the specific performance of a contract like the one here in question, which was signed by the vendor, but not by the plaintiff, and where the Court said: "Was the contract mutual? This is not disputed in the pleading or the evidence. It is said that it is not signed by the plaintiff but this is not necessary even under the Statute of Frauds, which only requires the signature of the party to be charged. 'There may be a mutual contract to which both parties have given their assent though the evidence of such assent may exist in different form as to the two parties. As to one it may be verbal, while the other is expressed by his signature in writing.' *Waterman on Specific Perf.,* Sec. 201. The testimony as to the plaintiff's acceptance of the contract is ample, and besides this if there had been doubt on this question it disappeared when he filed his bill to enforce it." That case is cited by CHIEF JUDGE BOYD in *Brewer* v. *Sowers,* 118 Md. 681, in support of the right of a party to enforce an option which had been exercised by the plaintiff, and the Court was considering the question whether the contract was wanting in mutuality, and was also approved and relied on in the case of *Jaeger* v. *Shea,* 130 Md. 1, where the contract was not signed by the vendee, and where JUDGE URNER, after quoting the above statement of JUDGE FOWLER, said: "There can be no question in this case as to the vendee's acceptance and part performance of the contract of sale, and the objection that it is not mutual must therefore be overruled."

It is said by counsel for the appellant that in *Engler* v. *Garrett* and *Jaeger* v. *Shea* the Statute of Frauds was not relied on in the answer of the defendant, but there is no force in this suggestion. The general rule as stated in *Miller's Eq. Proc.,* Secs. 700, 701, 702, is that if the parol agreement is fully set out in the bill, and is confessed in the answer, a court of equity will enforce it, notwithstanding it is within

the Statute of Frauds and is not in writing, provided the statute is not relied upon as a defense, but if the statute is relied on in the answer the Court will not decree specific performance. In the case at bar, however, the defense is not that the defendant did not sign the memorandum of the contract, and that she is therefore protected by the statute, but that the *plaintiff* did not sign, and that by reason of that fact the agreement is lacking in the requisite *mutuality*. As the cases we have referred to hold that agreements of the kind sued on are not open to *that* defense, it is immaterial whether the statute is relied on or not.

The record in this case leaves no doubt about the plaintiff's acceptance of the contract, and as it is fair, reasonable, definite, mutual and founded on a valuable consideration, we see no reason why the defendant should not be required to perform it, and we will therefore affirm the decree of the Court below.

*Decree affirmed, with costs.*