GEORGE B. CALTRIDER ET AL. *v.* CHARLES L. CAPLES ET AL.

[No. 84, October Term, 1930.]

*Decided February 11th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Louis J. Jira, William P. Cole, Jr., C. Walter Cole,* and *Elbridge B. Donaldson,* submitting on brief, for the appellants.

*Thomas M. Jenifer,* with whom was *H. Courtenay Jenifer* on the brief, for Charles L. Caples, appellee.

SLOAN, J., delivered the opinion of the Court.

On October 8th, 1927, the appellant George B. Caltrider purchased from his brother, Wilmer A. Caltrider, a lot of ground at Reisterstown in Baltimore County for $2,500, on account of which he paid that day $500. The deed for the lot was not executed until February 6th, 1928, and recorded in the clerk's office of Baltimore county a week later, February 13th, 1928. In the meantime, on January 27th, 1928, Charles L. Caples, appellee, obtained a judgment in the Circuit Court for Baltimore County against Walter A. Caltrider and his wife for $1,773.40. It does not certainly appear from the record when execution was issued on the judgment by Caples, but it does appear that, subsequent to the delivery of the deed to George B. Caltrider, the sheriff of Baltimore county advertised the lot for sale on the 20th day of August, 1929. On August 8th, 1929, George B. Caltrider and Vennia Caltrider, his wife, filed their bill, reciting all the aforegoing facts, praying that Charles L. Caples and Samuel A. Brooks, sheriff, be enjoined from enforcing the judgment of Caples against Wilmer A. Caltrider and wife, and selling the lot so conveyed to George B. Caltrider.

The writ of injunction was issued as prayed, and, after answers were filed by the appellees, testimony was heard, and thereupon a decree was passed dissolving the injunction and dismissing the bill, from which decree this appeal is taken.

The appellants contend that the sale by Wilmer A. Caltrider to his brother, George B. Caltrider, having been made before the judgment of Caples was obtained, the judgment is not a lien on the property, even though the deed had not then been executed and delivered. The appellees contend that the judgment is a lien on the lot, subject only to the purchase money already paid on account, and that, after the entry of judgment, the purchaser, George B. Caltrider, paid any further sums of money at his peril until and unless the judgment was satisfied.

The debt from Wilmer A. Caltrider to Caples appears to

have been incurred before the purchase by George B. Caltrider, and the judgment procured afterwards. The only witness testifying in the case was the appellant, George B. Caltrider, who said: "I told Mr. Caples I purchased the property and being good friends we talked the thing over. I did not know what my brother owed him, but I knew he was involved to some extent." That was "previous to the time the thing had gone through," and before the judgment was obtained.

What rights the judgment creditor has are derived solely from statute. "At common law a creditor had no remedy against the lands of his debtor for the satisfaction of his claim, but by 13 Edw. I, c. 18, it was provided that when a debt is recorded or damages awarded it shall be thenceforth 'in the election' of a creditor to have a writ of *fieri facias* against the goods and chattels of the debtor, or else a writ that the sheriff deliver to him all the chattels of the debtor and one-half of his land." 3 *Tiffany on Real Property*, 2775; *Coombs v. Jordan*, 3 Bland, 284, 22 Am. Dec. 236. "Judgments create liens only because the land is made liable by statute to be seized and sold on execution." *Dyson v. Simmons*, 48 Md. 207, 215; *Valentine v. Seiss*, 79 Md. 187, 28 A. 892; Code, art. 26, secs. 14-20; art. 83, sec. 1.

The appellee's reliance in the instant case seems to be based on the priority in time of the entry of his judgment over the execution and recording of the appellant's deed, and construes a quotation from *Union Trust Co. v. Biggs*, 153 Md. 56, 137 A. 509, 512, to the effect that "the real and not the apparent rights of the judgment debtor in the property measure the rights of the judgment creditor," as supporting the contention that the judgment is a lien on the land, subject only to an equitable lien in favor of the appellant for the amount ($500) paid on account of the purchase money. That, however, is ascribing a meaning different from that expressed by the quotation, which, together with the case from which it is taken, supports the rule applied to the facts of this record. The apparent right, according to

the record evidence, would give the judgment precedence over the deed, whereas the real right was in a contract of sale whereby the legal title was still in the judgment debtor who held as trustee for his purchaser, the appellant. *Hampson v. Edelen,* 2 Har. & J. 64. 3 Am. Dec. 530.

The appellee's contention was that of the appellant in *Knell v. Green St. Bldg. Ass'n.,* 34 Md. 67. The appellee held a mortgage, which had been executed before the appellant's judgment, for money loaned at the time, but not recorded until two months after the judgment was entered. The appellant contended "that as against a judgment creditor without actual notice of the mortgage, that instrument operates only from the time it is recorded." In support of this position we have been referred to Code of 1860, art. 24, sec. 15 (now Code, art. 21, sec. 16). That section relates only to the case "when there are two or more deeds conveying the same lands or chattels real," and provides that "the deed or deeds first recorded according to law shall be preferred if made *bona fide* and upon good and valuable consideration," and the section by its terms applies to all other deeds or conveyances to the validity of which recording is necessary. If the sixteenth section had been designed to protect the rights of a judgment creditor, apt words for that purpose would have been employed. But he is neither in fact nor in law a *bona fide* purchaser, as has been often decided. "The requirement of record has almost invariably been regarded as intended for the protection of subsequent purchasers only, so that the failure to record the instrument in no way affects the title as between the parties thereto." See 2 *Tiffany on Real Property,* 2180, sec. 567. In this State, while it is held that the legal title does not pass until the conveyance is recorded, the deed in the meantime is effective "as a contract for conveyance against all creditors who shall have become such before it was recorded." *Nickel v. Brown,* 75 Md. 172, 187, 23 A. 736, 740; *West v. Pusey,* 113 Md. 569, 572, 77 A. 973.

The law defining the rights of bona fide purchasers of land

from vendors against whom judgments are recovered subsequent to the purchase and before the execution and delivery of the deed, as stated in *Hampson v. Edelen*, 2 H. & J. 64, 3 Am. Dec. 530, and consistently followed since, is: "A contract for land, bona fide made for a valuable consideration, vests the equitable interest in the vendee from the time of the execution of the contract, although the money is not paid at that time. When the money is paid according to the terms of the contract, the vendee is entitled to a conveyance, and to a decree in chancery for a specific execution of the contract, if such conveyance is refused. "A judgment obtained by a third person against the vendor, *mesne* the making the contract and the payment of the money, cannot defeat or impair the equitable interest thus acquired, nor is it a lien on the land to affect the right of such *cestui que trust.*" "The fact that judgments have been subsequently recovered against the party agreeing to convey or charge the land, will in no manner defeat the right to have the agreement executed. As has been very properly said, a judgment has relation to the time when it is entered up. It will not affect any bona fide conveyance made for value before that time, for it only attaches upon that which is then, or afterwards becomes the property of the debtor. The fact that the debtor may retain the property at law does not change the principle upon which a court of equity proceeds. If the property is charged in equity before the entry of the judgment, the judgment will not affect such charge. *Whitworth v. Gaugain*, I Phill. 728, 729." *Dyson v. Simmons*, 48 Md. 207, 215. "The whole foundation of this doctrine of equity is that the equitable title and interest passes by the contract of sale and from the time of its execution, and it contemplates delivery of possession as well as payment of the purchase money and a conveyance at a future period." *Brewer v. Herbert*, 30 Md. 301, 310, 96 Am. Dec. 582. See, also, *Hartsock. v. Russell*, 52 Md. 625; *Valentine v. Seiss*, 79 Md. 187, 28 A. 892; *Cramer v. Roderick*, 128 Md. 422, 98 A. 42; *Kinsey v. Drury*, 146 Md. 227, 232, 126 A. 125; *Union Trust Co. v. Biggs*, 153 Md. 50, 60, 61, 137 A. 509.

The appellee apparently labors under the impression that, because his judgment was entered before the deed to the appellant was executed, it was the duty of the appellant to see that his judgment was paid out of the balance owing on the purchase money, which was more than sufficient to satisfy it. Mr. Tiffany, in his *Real Property*, 2781, sec. 670, says that, though the weight of authority in this country recognizes the lien of the judgment creditor against the vendor's title, it is "liable to be divested by the payment of whatever remains due by the vendee." *Hampson v. Edelen, supra.*

The appellee in his answer says "that the paper writing could not have been recorded as a contract of sale because it did not comply with the legal requirements attending the execution of contracts of this character and therefore, said paper writing has no binding legal effect as a contract of sale of the lot mentioned in paragraph one (from what we have said it must appear that recording of the agreement is not necessary to make it binding between the parties and as against the appellee's judgment), and specific performance of said paper writing could not be required by a court having equity jurisdiction because of the indefiniteness of its terms." The evidence of the sale, aside from George B. Caltrider's (appellant's) testimony, was the following receipt: "October 8, 1927, Received of G. B. Caltrider $500.00 as deposit on lot purchased from W. A. Caltrider, formerly owned by Ionic Lodge. (Signed) W. A. Caltrider," and G. B. Caltrider's check for the amount, on which there was a notation. "For deposit on lot." Compare with receipt in *Hensel v. Calder*, 135 Md. 487, 109 A. 195.

Assuming, without deciding, that the receipt and check could not be enforced for the only reason that the amount of the purchase price was not named (*Hensel v. Calder, supra*), the appellee cannot, in the absence of fraud or bad faith, of which there is not even a suspicion in the record, raise the question. The appellee's judgment gave him "no right in the land nor any estate in it, but simply a lien on it for payment of his debt. * * * He is neither in fact nor in law a bona fide purchaser, and must stand or fall by the

real, and not by the apparent rights of the defendant in the judgment." *Ahern v. White*, 39 Md. 409, 420; *Lee v. Keech*, 151 Md. 34, 36-37, 133 A. 835, 46 A. L. R. 1488. If the vendor were in court resisting the specific performance of his (here undisputed) agreement, we would be faced with the necessity of deciding the question, but he has obviated that by carrying out his agreement and thus admitting the facts alleged in the bill of complaint. *Artz v. Grove*, 21 Md. 456; *Huse v. Reed*, 157 Md. 504, 513, 146 A. 579.

This court being of the opinion that George B. Caltrider acquired the title to the lot free of the judgment of the appellee against W. A. Caltrider, the decree dismissing the bill and dissolving the injunction will be reversed.

*Decree reversed, with costs.*