702 A.2d 988

**MAY DEPARTMENT STORES, Assignee**

v.

**MONTGOMERY COUNTY, Maryland et al.**

**No. 661, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Dec. 3, 1997.

Ronald M. Abramson (Ronald S. Canter and Wolpoff & Abramson, L.L.P., on the brief), Bethesda, for appellant, May Department Stores.

Gordon J. Brumback (Law Offices of Stanley S. Pickett, on the brief), Greenbelt, for appellant, Avenel.

Charles W. Thompson, Jr., County Atty. (Karen L. Federman Henry, Associate County Atty., on the brief), Rockville, for Appellee.

Before WENNER, CATHELL and BYRNES, JJ.

CATHELL, Judge.

May Department Stores, Inc. (May), and Avenel Community Association, Inc. (Avenel), judgment lien holders, appeal from the decision of the Circuit Court for Montgomery County that denied them the priority of their judgment liens in

respect to the disbursement of surplus funds following a judicial foreclosure sale. The court instead disbursed the entire surplus to an agency of Montgomery County (County) pursuant to the purported authority of a Montgomery County ordinance. Appellants present several issues on appeal:

1. Whether the court below erred by failing to order that Appellants' valid judicial liens be satisfied from the surplus proceeds of a foreclosure sale[.]

2. Whether the Montgomery County Moderately Priced Dwelling Unit Ordinance is violative of the Maryland and U.S. Constitutions when applied in a fashion that deprives judgment lienholders of surplus proceeds in a foreclosure sale[.]

3. Whether the Court below erred by failing to address the equity argument presented by Appellant, Avenel Community Association, Inc.

In the resolution of this appeal, we shall resolve only the first issue. Resolution of this issue renders it unnecessary to address extensively the constitutional issues or the equity argument made by Avenel. We shall be concerned primarily with arguments relative to the first issue. We shall hold that the County is preempted from asserting the provisions of a local ordinance that provide for a priority of liens that is in direct conflict with provisions of the Maryland Code, the Maryland Rules of Procedure, and Maryland cases. We will explain our decision after we briefly recount certain pertinent facts.

## The Facts

Montgomery County adopted a local ordinance designed to encourage developers to provide for low and moderate-income housing.[1] Apparently, in order to ensure that the program excluded speculators who could purchase the properties at a low price and then quickly resell for a high profit, the County ordinance contained provisions limiting the resale of proper-

---

1. Numerous provisions of that ordinance designed to facilitate developer participation are not relevant to the issue at bar.

ties for an extended period of time. These restrictions set up methods for establishing resale prices and a method for computing the sums required to be remitted to the housing authority if the housing units were sold within the prohibited resale periods.

In 1992, Deborah Farr purchased one of the units through the Montgomery County Department of Housing and Community Affairs from Rock Run Limited Partnership, the developer. Farr's deed was from the limited partnership. Farr obtained financing from the Housing Opportunities Commission for Montgomery County in the amount of $94,100, secured by a deed of trust. Farr defaulted on the loan, and the property subsequently was sold at a foreclosure sale on August 14, 1996, to William T. Wheeler for $147,000.[2] A surplus resulted.

On October 26, 1994, after Farr had obtained title to the property but before the foreclosure suit was filed in 1996, May Department Stores, Inc., d/b/a/ Woodward and Lothrop, obtained a judgment against Farr. The judgment subsequently was filed as a "Notice of Lien" in the Circuit Court for Montgomery County. Farr also defaulted on her payments to her homeowner's association, Avenel Community Association, Inc. Prior to the filing of the foreclosure action, Avenel also had obtained a judgment against Farr. It was filed in the Circuit Court for Montgomery County in November of 1995.

Both May and Avenel filed claims against the surplus resulting from the foreclosure sale. After the foreclosure proceeding was instituted but prior to the sale itself, the Department of Housing and Community Affairs of Montgomery County wrote a letter to a law firm informing them that

[t]he MPDU Law provides that if an MPDU is sold through a foreclosure or other Court-ordered sale during the first ten years after the original sale, any amount of that sale price that exceeds the total of the approved resale price plus reasonable foreclosure costs must be paid into the

---

2. Wheeler is not a party to this case.

County's Housing Initiative Fund. After payment is made, the covenants will be released by the County.

Apparently, lawyers in that firm were the trustees conducting the foreclosure sale.

As far as we can determine, the County, prior to the auditor's report, never filed a claim against the surplus proceeds of the sale in the proceeding. The auditor brought this to the attention of the court in the Auditor's Answer to Exceptions to Auditor's Report. The answer provided:

[E]xamination of the Docket Entries does not disclose a claim being file[d] on behalf of County Department of Housing and Community Affairs. That there is attached to the vouchers furnished to the Trustee letter 7/29/96 from Department of Housing and Community Affairs requesting surplus proceeds.

The County's letter, however, must have caused concern for the auditor because after the sale was ratified, he notified the trial court that he was unable to determine payment of the surplus proceeds and requested a hearing be held before the trial court to determine the apportionment of the surplus. Montgomery County then filed what it termed "Exceptions to Auditor's Report, Motion to Pay Excess Proceeds to Montgomery County" [3] and requested a hearing. A hearing was held after which the trial court rendered its opinion. It found:

According to the County, said excess triggers distribution pursuant to Section 25A–9(e), which in essence means the County receives the entire surplus notwithstanding any prior "junior" liens on the property.

. . . According to the . . . County, "senior liens" mean either a first mortgage or first deed of trust. No other lienholder, including judgment lienholders, fall within the definition of senior lien. Hence, the only liens to be paid

---

**3.** The docket entries reflect that in November 1996, the County filed this Motion to Pay Excess Proceeds to Montgomery County. We have been unable to find a copy of it in the extract. The document referred to as the County's motion and identified as being located on page thirty-two of the extract is an affidavit, not a motion.

prior to the county obtaining proceeds pursuant to Section 25A–9 are first deeds of trust and liens filed under the Maryland Contract Liens Act.

The [C]ounty further asserts that the Declaration of Covenants for Avenel, incorporated into the Deed, act to protect the count[y']s interest and to put any creditors on notice....

....

Upon review ... this Court finds that pursuant to Section 25A–9(e) of the Montgomery County code, surplus proceeds from the foreclosure sale ..., shall be paid to the Montgomery County Housing Initiative Fund. In support of its ruling the court further finds that the restrictions set forth in this section as provided in the Declaration of Covenants for Avenel Subdivision are covenants that run with the land.... Clearly, the covenants run with the land and judgment liens arising after the covenants had been recorded are bound [and] are subject to Section 25A–9(e) of the [Montgomery County] Code.

The next issue ... is whether judgment liens constitute "senior liens" for the purposes of Section 25A–9(e)(4) of the County Code. The Court need not address the status of judgment lienholders in the ordinary course of property transactions.[4] The narrow issue ... is to define senior lienholder within a specific context. Traditionally, first or prior mortgages and deeds of trust have been labeled "senior" to those of secondary mortgages and deeds of trust. The Court accepts this distinction for purposes of Section 25A–9(e)(4)....

The trial court went on to find that the County had a paramount claim to the surplus proceeds because, even though appellants' judgment liens were recorded prior to any asser-

---

**4.** *It is here that the trial court made its most serious mistake.* The status of lienholders in respect to judicial sales is dictated by the provisions of the Maryland Code and case law. As we shall indicate, local governments cannot unilaterally change or attempt to preempt State law.

tion of a lien or claim by the County, these liens were not "senior" liens as described in the Montgomery County Code because they were not first mortgages or deeds of trust. In other words, the County ordinance was found to control the priorities of the various liens following a judicial sale of a property that had been purchased through this particular County agency.

The County argues in its brief that under its home rule power and under the authority of the Maryland Code, section 12.01 of Article 66B, it has the power to enact an affordable housing law and to impose restrictions on the resale of such housing. We agree. Section 12.01(a)(2) of Article 66B expressly permits the legislative bodies of counties, in conjunction with affordable housing programs, to impose "restrictions on . . . resale of housing . . . to ensure that the purposes" of the act are carried out.

This statute is made applicable to the County by section 7.03 of Article 66B. Clearly, the County had the power to create an affordable housing program that imposed resale prohibitions. Accordingly, we must examine the County ordinance.

We agree with the County that the State statute permits the County to impose restrictions on the resale of affordable housing units. We shall presume, but not decide, that the County has the power to impose restrictions on foreclosure sales and did, in fact, exercise the power to impose such restrictions. We then must address whether the authority granted to the County was sufficiently broad, and sufficiently clear, to enable the County to change the priority of liens, *i.e.,* to confer unilaterally upon itself (a general creditor) a priority ahead of judgment liens afforded a higher priority by State statute. We initially note that the State statute, while specifically granting to the County the ability to enact resale prohibitions, does not grant to the County any *specific* power to alter the priority status of judgment lien holders.

The County created its affordable housing program by enacting Chapter 25A of the Montgomery County Code. The

County ordinance, among other things, requires a developer/applicant to execute and record covenants assuring that the ordinance's "restrictions ... run with the land for the entire period of control," Montgomery County Code § 25A–5k(1), and that the covenants executed must "bind the applicant, any assignee, mortgagee, or buyer, and all other parties that receive title to the property." Montgomery County Code § 25A–5k(2). The ordinance then requires that *the covenants* contain a provision "assuring that ... [t]hese covenants must be senior to all instruments securing permanent financing." Montgomery County Code $ 25A–5k(2). Of course, the recordation of any covenant prior to the execution of mortgages or deeds of trust normally will encumber the property.

Section 25A–9 of the Montgomery County Code, "Control of rents and resale prices; foreclosure," provides as follows:

(a) *Resale price and terms.* Except for foreclosure proceedings, any MPDU ... offered for sale ... must not be resold during the control period for a price greater than the original selling price plus:

. . . .

(e) ... If an MPDU is sold through a foreclosure or other court-ordered sale, a payment must be made to the Housing Initiative Fund as follows:

(1) ... [A]ny amount of the foreclosure sale price which exceeds the total of the approved resale price under subsection (a), reasonable foreclosure costs, and liens filed under the Maryland Contract Lien Act, must be paid to the Housing Initiative Fund....

. . . .

(4) If the MPDU is sold subject to senior liens, the lien balances must be included in calculating the sale price.

All MPDU covenants must be released after the required payment is made into the Housing Initiative Fund.

### The effect of the County ordinance on the priority of liens in judicial sales

We next examine the effect of the Montgomery County Code on the priority of liens.

In *County Council v. Investors Funding Corp.*, 270 Md. 403, 413, 312 A.2d 225 (1973), the Court of Appeals noted what it had said about a county's home rule power in *Montgomery Citizens League v. Greenhalgh*, 253 Md. 151, 160–61, 252 A.2d 242 (1969):

"The Council . . . is also given statutory power to pass 'all' ordinances it deems expedient . . . and the only limit on its powers is . . . that such an ordinance cannot be inconsistent with . . . *the laws of the State* . . . .

. . . .

Gratification would not be afforded the purposes of home rule . . . if the language of § 5(S) of Art. 25A were not to be construed as a broad grant of power to legislate on matters not specifically enumerated in Art. 25A. . . ."

*Investors Funding*, 270 Md. at 413, 312 A.2d 225 (emphasis added). The *Investors Funding* Court went on to hold that, under home rule, the County was invested with the power to pass ordinances in abrogation of the common law. It reasoned:

Apparent from our previous discussion of Article XI–A of the [Maryland] Constitution is our conclusion that its underlying purpose is to share with the counties, within well delineated limits, the legislative powers formerly reserved to the General Assembly. . . . As indicated, the purpose of home rule was to share the legislative power . . . to . . . revise . . . the . . . common law. . . .

*Id.* at 418, 312 A.2d 225 (footnote omitted).

The Court in *Investors Funding*, however, went on to discuss a section of the local ordinance passed under the county's home rule power that appeared to conflict with a public general law. It first discussed a previous case, *Heubeck v. Mayor of Baltimore*, 205 Md. 203, 107 A.2d 99 (1954), quoting from that case as follows:

"The Public General Law, applicable to the entire State, provides for the eviction of tenants holding over . . . if proper notice has been given. . . . The Rent Control Ordinance, therefore, prohibits an action which the Public Gen-

eral Law permits.... [T]here is a conflict between the ordinance and Public General Law, and as between the two, the Public General Law prevails...."

*Investors Funding*, 270 Md. at 422–23, 312 A.2d 225. The *Investors Funding* Court then examined whether the county's ordinance relating to retaliatory evictions conflicted with a State law providing for summary evictions. The Court, referring to the holding in *Heubeck*, held:

We are not persuaded to alter that conclusion by the fact that the prohibition of Chapter 93A [the county ordinance] operates indirectly and circuitously. By making *unlawful* the action which the Public General Law *permits*, this ordinance clearly creates a conflict....

. . . .

... Since the public general laws ... grant a landlord a legal right to evict ... the County may not require him to agree not to do so. Therefore, § 93A–26(*o*) is also invalid.

*Id.* at 423–24, 312 A.2d 225 (footnote omitted).

The Court also invalidated the county ordinance's prohibition of oral leases, holding:

This provision is in conflict with the provisions of Art. 21, §§ 2–101 and 2–102 of the recently adopted Statute of Frauds....

It is clear to us that oral leases, valid at common law, are recognized and *permitted* by the public general law and hence may not be prohibited by the Council....

*Id.* at 425, 312 A.2d 225. We turn now to the case at hand.

Section 11–402 of Md.Code, the Courts and Judicial Proceedings Article (1995 Repl.Vol., 1997 Supp.) provides:

(a) *Definition.*—In this section, "land" means real property or any interest in or appurtenant to real property.

(b) *Judgment of court of original entry.*—If indexed and recorded as prescribed by the Maryland Rules, a money judgment of a court constitutes a lien to the amount and *from the date of the judgment* on the judgment debtor's interest in land located in the county in which the judgment

was rendered except a lease from year to year or for a term of not more than five years and not renewable.

(c) *Judgment of another court.*—If indexed and recorded as prescribed by the Maryland Rules, a money judgment constitutes a lien on the judgment debtor's interest in land located in a county other than the county in which the judgment was originally entered.... [Emphasis added.]

Maryland Rules of Procedure (Md.Rule) 2–621 contains similar provisions. There is no dispute as to whether the judgment liens of appellants were recorded and indexed properly. They were, at the time of the foreclosure sale, valid judgment liens. Moreover, appellants' judgment liens were liens on the Farr property, which was the subject of the foreclosure sale.

■ We initially note that under Maryland statutory law only a purchase money mortgage, or perhaps in some cases an instrument securing future advances, takes priority over a prior recorded and indexed judgment lien. The senior status afforded purchase money mortgages was created by statute. Section 7–104 of Md.Code, Real Property Article (1996 Repl. Vol., 1997 Supp.), provides:

**§ 7–104. Priority of purchase-money mortgage or deed of trust.**

If property is sold and granted, and at the same time the purchaser gives a mortgage or deed of trust to secure total or partial payment of the purchase money, the mortgage or deed of trust shall be preferred to any previous judgment or decree for the payment of money which is obtained against the purchaser if it recites that the sum received is all or part of the purchase money of the property. This section is applicable regardless of whether the mortgage or deed of trust is given to the vendor of the property or to a third party who advances all or part of the purchase money.

If an owner of unmortgaged property who, after the purchase of the property, acquires a new indebtedness secured by a mortgage on that property (this mortgage would then be a first mortgage or deed of trust), that first mortgage is, nevertheless, inferior to any prior recorded and indexed judg-

ment lien. The mortgage would remain a first mortgage, but would not be the senior lien. It would be inferior and junior to the prior judgment lien.

Maryland Rule 3–621 states that any money judgment "constitutes a lien ... on the judgment debtor's interest in land located in a county." The lien is effective from the date it is recorded and indexed in the county in which the land is located. The rule provides that the lien is established formally by filing, with the Clerk of the Court of any county, a "Notice of Lien of Judgment." Appellants filed such notices in the case at bar. Maryland Rule 14–201(b)(5) defines "Lien Instrument" to include "any other instrument creating or authorizing the creation of a lien upon the property." The liens were, therefore, perfected as property liens prior to any claim being asserted by the County.

In order to understand better the statutory and case law treatment of the matter of judgment lien priorities, we shall depart from our normal practice of commencing our discussion of the law with the most recent cases and instead begin by noting the long history in Maryland of the establishment of such priorities.

An early Maryland case emphasized that judgment liens have, since the early days of the State, enjoyed a **statutory** basis. *Messinger v. Eckenrode,* 162 Md. 63, 158 A. 357 (1932), involved the priority between two judgment liens, one of which resulted from the advancement of purchase money for the property in question. The judgment holder in respect to the purchase money obligation, Messinger, had not protected her claim in the manner provided by the Maryland statute in effect at that time for the protection of advancements of purchase money. The Court of Appeals discussed the nature of the priorities of liens and noted that such priorities had statutory origins. Additionally, the Court discussed the effect of the purchase money creditor's failure to perfect her claim in the manner provided for by the then existing statute. The Court stated:

The contention of the appellees [the Eckenrodes] is that their judgment, having been entered first and being effective from its date, is entitled to priority, while the appellant [Messinger] contends that the only real property the Heagys had was that which she conveyed to them, and that her judgment gave her an equitable lien for the purchase money, and that she is therefore entitled to the entire proceeds of sale, and, if that does not appeal to the court, then, the property coming under the judgments at the same time, the proceeds should be distributed *pro rata* to the judgments of the appellant and the appellees.

The answer to the appellants' first contention is that a judgment, being a general and not a specific lien, is enforceable, not only against the property sold by the creditor to the debtor, but against any other property within the jurisdiction of the court wherein the judgment is entered. The fact that the appellant chose to take a judgment in payment of the purchase money does not give her security an effect different from that of a judgment to any other person. The statutes and decisions in this state show the vendor the ways and means whereby unpaid purchase money may be secured, and to act otherwise is to take the risk which negligence of one's rights involves. By Code, art. 66, sec. 4, it is provided that a purchase-money mortgage shall be superior to any previous judgment or decree or the payment of money. The same protection may also be afforded a third party who advances the purchase money in whole or in part. A vendor's lien for unpaid purchase money may also be reserved under the provision of article 66, section 31. In *Ahern v. White,* 39 Md. 409, it was held that a vendor had a lien superior to a prior judgment, if the mortgage taken by him in payment of the purchase money were recorded simultaneously with the deed, and the opinion distinguished the decision from the case of *Rawlings v. Lowndes,* 34 Md. 639, when dower was held to attach because there was an interval of two weeks between the recording of the deed and mortgage, and the case of *Heuisler v. Nickum,* 38 Md. 270, where the lien of a judgment was held to attach because the

mortgage was recorded three days after the deed. In the *Ahern* case the court was careful to distinguish the nature of a judgment and a lien reserved by a mortgage, and in commenting on the opinion in *Knell v. Green Street Bldg. Assn.*, 34 Md. 67, said: "The court in that case at some length considered the nature of a judgment and the rights it confers. It gives the judgment creditor no right to the land nor any estate in it, but simply a lien on it for payment of his debt; and such lien, being a general one, in no wise affects or impairs the vendor's lien for unpaid purchase money. He is neither in fact nor in law a *bona fide* purchaser, and must stand or fall by the real, and not by the apparent rights of the defendant in the judgment." (This decision antedated the Act of 1910, c. 216, Code, art. 66, sec. 31, by which a vendor shall have a vendor's lien only when reserved by the deed.) *See Caltrider v. Kaples [Caples]*, 160 Md. 392, 153 A. 445; *Lee v. Keech*, 151 Md. 34, 133 A. 835. The nature of the judgment such as the appellant contends she has is well defined by the Supreme Court of Virginia in *Kidwell v. Henderson*, 150 Va. 829, 143 S.E. 336, 340, wherein it is said: "A judgment constitutes a general lien upon all the debtor's real estate. The character of the cause of action does not affect the nature of the lien, and therefore a judgment for purchase money has no lien superior to that of a judgment for any other debt or liability." The appellant having failed to avail herself of the security which the law provided, she cannot now retrace her steps and cure the situation.

*Messinger*, 162 Md. at 65–66, 158 A. 357. The Court established that the purchase money claim enjoyed no special protection because the statutory procedures affording special protection for purchase money mortgages had not been followed. It then went on to discuss the priority of the respective judgment liens, furnishing in the process a historical review of the treatment of judgment lien priorities.[5]

---

5. There is a least one exception to the general rule that judgments take priority from the date of their recording. That exception was restated

This then brings us to the other contention, and that is, whether the Eckenrode judgment, being first in point of time, has priority over the Messinger judgment, or, the land becoming subject to both judgments at the same time, should the proceeds of sale be apportioned between them.

"Judgments create liens only because the land is made liable *by statute* to be seized and sold on execution." *Dyson v. Simmons,* 48 Md. 207, 215. At common law a creditor had no remedy against the lands of his debtor, and it was not until the statute of Edw. I, c. 18, that a debtor's land could be subjected to an execution, and after that act the creditor could secure a writ of *elegit* to the sheriff to deliver to him the chattels of the debtor and one-half of his land. "In one or two states (Maryland and Virginia), the lien has been regarded as existent by force of this statute, or of a colonial statute giving a right to an execution." 3 *Tiffany on Real Property,* 2775; *Coombs v. Jordan,* 3 Bland, 284, 297. The authority in this state for the execution of a judgment against the lands of a debtor is derived from the fourteenth and fifteenth sections of the statute of 29 Car. 2, cap. 3 (statute of frauds). The fourteenth section provides for the entry of the judgment and the fifteenth "that such judgment as against purchasers *bona fide* for valuable consideration of lands, tenements or hereditaments to be charged thereby, shall in consideration of law, be judgments only from such time as they shall be so signed," etc. *(Coe's Alexander's British Statutes,* 692, 749, 750), and shall not "affect any lands or tenements as to purchasers or mortgagees," etc., unless "doggeted and entered" as provided by 4 and 5 W. & M., cap. 20, Docket *(Id.* 791), "and this judicial lien was afterwards mainly fortified and enlarged by a statute passed in the year 1732, 5 Geo. 2, c. 7 *(Id.* 964), applicable only to the then colonies of Great Britain, and received as law in Maryland, which subjected the whole of a

---

as recently as *G.E.Capital Mortgage Services, Inc. v. Levenson,* 338 Md. 227, 657 A.2d 1170 (1995), in which the Court of Appeals reaffirmed the applicability of equitable subrogation in a mortgage foreclosure case involving a refinancing of a first mortgage.

debtor's real estate to be taken in execution and sold for the payment of his debts." *Jones v. Jones,* 1 Bland, 447. The lien extends not only to presently owned, but to after-acquired, property (*Poe's Practice,* sec. 374; *Ahern v. White,* 39 Md. 409, 417), is effective from the date of its entry, and as amongst "several judgments against the same debtor they take effect according to their date and are entitled to be satisfied *in the order of their seniority,* without reference to the date of their execution, or the time at which it may be placed in the hands of the sheriff." *Poe's Practice,* sec. 378. "The lien relates to, and begins from the date of the judgment, and as between different execution creditors, the priorities are always fixed; not from the date when the executions of each, of right, might have issued, but from the date of the judgments respectively." *Robinson v. Consolidated Real Estate & Fire Ins. Co.,* 55 Md. 105, 110; *Dyson v. Simmons,* 48 Md. 207, 215. And in *Leonard v. Groome,* 47 Md. 499, 504, it was said: "The purchaser at a sale under process of execution upon a senior judgment holds the title above junior judgments and cannot be disturbed thereby. The holders of the junior judgments may resort in that forum (law) to any surplus after satisfaction of the execution." [Emphasis added.]

*Messinger,* 162 Md. at 67–68, 158 A. 357. In the even earlier case of *Robinson v. Consolidated Real Estate & Fire Insurance Co.,* 55 Md. 105 (1880), the Court was concerned with a judgment entered to secure future advances. It stated:

A judgment entered with a stay of execution is no less a lien from its date, because the right to issue execution is suspended for a time. The lien relates to, and begins from the date of the judgment, and as between different execution creditors, the priorities are always fixed; not from the date when the executions of each, of right, might have issued, but from the date of the judgments respectively....

. . . .

... If the rights of the parties are to be adjusted according to the dates when the liens by law, became such, the judgment being earlier in date was properly awarded priori-

ty. If the liens are to be regarded as constructive only, and that notice of one or the other must control as the party had notice, still the judgment debtor has the superior equity; for his judgment was already of record and was notice to the appellants of its existence and the rights acquired under it, before theirs began, and theirs were created with a full knowledge of the fact, and of the law in Maryland controlling the respective priorities.

*Id.* at 110–12.

The Court was concerned, in part, in *Union Trust Co. v. Biggs,* 153 Md. 50, 137 A. 509 (1927), with the nature of various estates after ratification of a foreclosure sale. Discussing the ability of a creditor to obtain a lien after the foreclosure sale, the Court stated:

So the whole beneficial ownership or estate of both the assignee and the mortgagor had passed from the land into the obligation of the purchaser to pay. In short, after the sale, equity regarded the property in the land as in the buyer, and the property or the price as in the assignee or mortgagor.... [U]pon its delivery, this deed is not effective merely from the day of its execution, but vests the property in the purchaser from the day of sale. *It follows that, after the day of sale, the mortgagor's equity of redemption generally ceases to exist as an interest in land. The day of sale, therefore, marked the close of the period in which any creditor could acquire a lien upon the mortgagor's interest in the mortgaged land or equity of redemption by simply obtaining a judgment against the mortgagor, since a judgment lien upon real estate or an equitable interest in land only exists because it gives the judgment creditor the right to make his debt out of the land or equitable interest in land of the judgment debtor ... . The real and not the apparent rights of the judgment debtor in the property measure the rights of the judgment creditor.*

... *[A]s his judgment was obtained after ... ratifi[cation] ... and, therefore, at a time when the mortgagor's equitable estate had been determined, the appellant acquired no lien by his judgment on the mortgagor's interest*

*in the obligation of the purchaser to pay the purchase price,* which was not a right or estate in land but a chose in action. *Id.* at 56–57, 137 A. 509 (emphasis added) (citations omitted).

▆▆▆▆ As far as we can determine, the County never had a judgment lien against the property, nor was one created when it filed its exceptions. Exceptions, in the first instance, do not create judgment liens. Even if they could, as to a respective property, they could not do so after the date of the sale and its ratification. In the case *sub judice,* the County merely filed exceptions with the court to the disbursement of the surplus proceeds because, at best, it may have had a cause of action, although we do not so hold, against the mortgagor or perhaps the purchaser. Under these circumstances, the County probably would not have been entitled to the proceeds even if there were no judgment creditors. One generally cannot, during the post-ratification and audit stages of a foreclosure action, assert what is essentially a cause of action to obtain the surplus from the foreclosure sale. Normally, proceedings based upon the alleged cause of action are necessary to achieve judgment creditor status and, through that status, priority.

Moreover, covenants are contractual obligations. Absent State statutory provision, they normally do not achieve automatic priority in a foreclosure proceeding. The State has legislated in the area, therefore preempting the field. In addition to section 7–104 o-f the Real Property Article, aforesaid, see section 7–110 (priority of security interests transferred to certain regulatory agencies by savings and loan associations), and Title 9 (Statutory Liens on Real Property) and other sections of the Real Property Article, aforesaid, that do give priority.

Additionally, as further support for the proposition that the establishment of lien priority is essentially a State matter regulated by State statutes, some of the relatively recent cases involving judgment creditors have restated the law of the earlier cases as it relates to priority. In *Liquor Dealers Credit Control, Inc. v. Comptroller of the Treasury,* 241 Md.

656, 661, 217 A.2d 571 (1966), involving an issue relating to tax liens, the Court opined:

Since a lien predicated upon the rendition or entry of a judgment did not exist at common law, a judgment is not, in and of itself, a lien on either real or personal property. *The right a judgment creditor has to a lien is therefore wholly statutory.* Furthermore, a judgment creates a lien on real property (and certain leasehold estates) only because the land is made liable, formally by statute but now by rule, to be seized and sold on execution. [Citation omitted, emphasis added.]

A second mortgage was foreclosed upon in the case of *Baltimore Federal Savings and Loan Association v. Eareckson*, 221 Md. 527, 158 A.2d 121 (1960), and the first mortgagee attempted to claim the surplus from the sale. The Court held that the purchaser at the foreclosure sale under the second mortgage took subject to the first mortgage, but the first mortgagee was not entitled to the surplus because it was not a judgment lien holder. The Court opined:

It should be noted that the first mortgagee never became a party to the proceedings, and the statement in *Tobin v. Rogers*, 121 Md. 249, 252, 88 A. 133, is apposite: "The first mortgagee not having been made a party, any sale under the second mortgage must necessarily have been subject to the operation of the first mortgage, unless the first mortgagee ... intervened in this proceeding, subjecting himself and his mortgage to the jurisdiction of the Court.... [B]ut he did not do it. All that he did, or that was done in his name, was to file a claim for the amount of his mortgage and certain interest thereon, and without asking to become or being made a party to the proceeding, so as to be bound thereby." ...

In the instant case not only was the first mortgagee not made a party, but it did not even file a claim.

*Eareckson*, 221 Md. at 529–30, 158 A.2d 121 (citations omitted).

Similarly, in *Goldenberg v. Title Guarantee Co.*, 212 Md. 448, 452, 129 A.2d 684 (1957), the Court, noting the general rule of priority as to judgment liens, stated: "[T]he case presents only a question of priority as between the first and second judgments.... There is no doubt that judgments take effect according to their date and are entitled to be satisfied *in the order of their seniority.*" (Emphasis added.)

We have not found a case in which the Court of Appeals has, in any degree other than in cases of equitable subrogation, modified the law as to the priorities of liens. The County, in the case *sub judice*, did not rely on the doctrine of equitable subrogation. The doctrine, in any event, would be inapplicable under the facts of this case. Moreover, the County has no power by its ordinances to change the order of priorities in respect to a judgment lien holder's claims to the surplus proceeds of the sale established by State statutes and rules (now sections 11–401, *et seq.* of the Courts and Judicial Proceedings Article and Maryland Rules of Court 2–621, 3–621, and 14–201).

Additionally, the County's assertion that it has a paramount lien by reason of the provisions of its local ordinance may run afoul of due process principles. In *Golden Sands Club Condominium, Inc. v. Waller*, 313 Md. 484, 545 A.2d 1332 (1988), the trial judge found the Contract Lien Act unconstitutional as applied to the facts of that case. The Court of Appeals reversed and in, doing so, made several observations:

Under the Contract Lien Act the opportunity for hearing is available ... before a lien may attach.... As *Mitchell* and *North Ga. Finishing* [6] make clear, those procedures are necessary if a valid lien or other substantial interference with a property interest is to arise prior to the possibility of a hearing.... [I]f, for example, there is a fair opportunity

---

6. *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Ga. Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

for judicial scrutiny *before* the lien attaches, the hearing requirement is satisfied.

*Golden Sands*, 313 Md. at 492, 545 A.2d 1332.

In the case *sub judice*, the first notice the County afforded to any party was when it filed exceptions to the audit.[7] The hearing on the exceptions was the first opportunity any party had to be heard on the issue of the County's assertion of a paramount lien. Even if the County Code provisions and the foreclosure covenant were sufficient to form the basis for a lien, they could not do so under the law until after all interested parties had an opportunity to be heard. To the extent the County would be entitled to a lien, it would not be so entitled until it gave notice—by way of the exceptions pleadings and an opportunity for a hearing. That point in time was, in this case, and under most foreseeable instances, subsequent to the perfection of prior judgment liens. In any event, even if the procedures were sufficient to establish the County as a lien holder, its lien would be junior to the judgment liens of appellants.

What the County has attempted is to advance, by its ordinance, the County's possible future status as a general creditor above the status of existing judgment creditors without ever obtaining a judgment. Judgment creditors normally are created by judicial action pursuant to State statutes and court rules. In the absence of State legislative action that gives Montgomery County's inchoate claims specific priority over judgment creditors, Montgomery County cannot by local ordinance give to itself a senior status, even under its general home rule powers or, specifically, its delegated authority to create a local affordable housing program. The County cannot elevate its status above the status afforded by State law and the status afforded other judgment lien holders. Appellants' liens are senior to appellee's interest. Upon remand, the disbursements will be made in accordance with the filing dates of appellants' liens.

---

7. As we have indicated, this document is not in the record extract.

Moreover, as is clear from all the cases we have cited, senior status is not reserved solely for first mortgages. In judgment lien priority law, senior status relates to the order of judgment lien priority. If one's judgment lien is recorded after four other judgment liens, those four prior judgment liens are *all* senior to the fifth judgment lien. The first of the four liens docketed would be the most senior. Each of the others would be junior to the other more senior lien, but itself senior to any judgment lien later recorded. Only the State by statute may change the order of priority. The County's attempt to restrict senior status to first mortgages alone is not supported by any law of which we are aware, and the County has referred us to none. Moreover, the County's attempt clearly conflicts with the State statutes and court rules regulating lien status.

### Preemption

■ The provisions of the ordinance upon which the County relies to give itself priority are preempted by State law. In our recent case of *Perdue Farms Inc. v. Hadder*, 109 Md.App. 582, 675 A.2d 577 (1996), we discussed the issue of preemption in the context of the juxtaposition of State environmental regulation and local zoning regulation. We said relative to preemption:

> State law may preempt local law in one of three ways: (1) preemption by conflict; (2) express preemption; or (3) implied preemption. Preemption by conflict exists if a local ordinance "prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law."

*Id.* at 588, 675 A.2d 577 (citation omitted)(footnote omitted).

In the case at bar, Montgomery County has attempted to change the State law with respect to the priorities of liens in a mortgage foreclosure context. The Montgomery County ordinance directly conflicts with the State law regarding lien priorities. Moreover, the State has legislated fully in this field. The establishment of judgment lien priorities in respect to judicial sales is for the State and for the courts. According-

ly, for this reason as well, we shall reverse the trial court. On remand, as we have indicated previously, the trial court is to afford to the respective judgment creditors the priority of their liens according to State law, without reference to the County ordinance.

**JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.**